## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 19-61370-CIV-SMITH/VALLE

HARVEY J. KESNER,

     Plaintiff,

vs.

BARRON'S, INC., et al.,

     Defendants.

_____/

**<u>DEFENDANT DOW JONES'S MOTION TO DISMISS FOR IMPROPER VENUE OR IN THE ALTERNATIVE TO TRANSFER VENUE, OR TO DISMISS FOR FAILURE TO STATE A CLAIM, AND INCORPORATED MEMORANDUM OF LAW</u>**

Defendant Dow Jones and Company, Inc., erroneously sued as "Barron's, Inc." ("Defendant" or "Dow Jones") moves to dismiss the Complaint of Plaintiff Harvey Kesner ("Plaintiff" or "Kesner") for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), or in the alternative to transfer this case to the Southern District of New York pursuant to 28 U.S.C. §1404, or to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). In support of its motion to dismiss for improper venue or transfer, Defendant joins in and adopts the arguments set forth in the motion of Defendant William Alpert to dismiss for improper venue, or in the alternative to transfer venue ("Alpert Motion").[1] In support of its motion to dismiss for failure to state a claim, Defendant states as follows:

## INTRODUCTION

On October 4, 2018, Defendant published a *Barron's* news story written by Mr. Alpert (the "Article"), prompted by a major securities fraud suit filed by the U.S. Securities and Exchange Commission ("SEC"), in which the SEC alleged that investor Barry Honig and other investors organized "pump-and-dump schemes" involving three small publicly traded companies. The SEC lawsuit alleges that the Honig group controlled the companies' managements, and that their scheme netted them more than $27 million, while leaving public investors with virtually worthless stock.

Public SEC records show that all three publicly traded companies that were the subject of the Honig group's alleged pump-and-dump scheme used the same law firm in which Plaintiff Harvey Kesner was a named partner—Sichenzia Ross Ference Kesner—with Plaintiff listed specifically in SEC filings from two of those three companies. SEC records also show that Plaintiff and the stock transfer company he controlled were involved with many companies in which the Honig group defendants invested.

Mr. Alpert's thoroughly researched news story reported on these official SEC filings and public records of judicial proceedings—including a lawsuit filed on the heels of the SEC action by one of the three companies that were the subject of the alleged pump-and-dump scheme, MabVax Therapeutics, alleging that Plaintiff Kesner breached his fiduciary duty as MabVax's securities lawyer by favoring Mr. Honig's interests over the company's. Among other things,

---

[1] Dow Jones respectfully requests, in the interest of judicial economy, that the Court take up its and Defendant Alpert's venue and transfer motions before addressing Dow Jones's substantive motion to dismiss for failure to state a claim.

the MabVax lawsuit alleges that Kesner improperly represented MabVax in its SEC filings and in the SEC investigation that resulted in the SEC action despite the conflict of interest arising from Kesner and his firm's involvement with Honig and the other defendants in the SEC action.

The matters discussed in the Article are of great interest to the public and particularly the investing public—*Barron's* readership.  Indeed, SEC records are publicly available to allow the investing public and others to review who is involved with, investing in and representing public companies.  While that story derived *from the public record* may be one that Plaintiff preferred not be told, that is not a basis for a defamation lawsuit under controlling law and well-established First Amendment principles.  Reporting on government records lies at the core of journalism and is not actionable as defamation under the fair report privilege.

Unable to dispute the public record, Plaintiff's Complaint focuses principally, if not exclusively, on claiming that the Article's headline ("The Lawyer at the Center of SEC Pump-and-Dump Case") is somehow false and defamatory.  (*See* Compl., ECF No. 1, at ¶¶ 2, 4, 6.)  But both on its face and when read in the context of the entire Article—as it must be—that headline does not accuse Plaintiff of "securities fraud" as he claims.  (*Id.* at ¶ 4.)  To the contrary, the body of the Article explains that Plaintiff's connection to the SEC case lies in the fact that not only was he (or the law firm that once bore his name) the lawyer for the three companies that were the subject of the SEC's pump-and-dump case, but also for dozens of other companies in which Honig and the other pump-and-dump defendants had an interest.

As a matter of law, the headline is a non-actionable "fair index" of the Article, which in turn accurately reflects undisputed public record facts and refutes the defamatory reading Plaintiff proffers. Additionally, the headline, like the Article itself, also is protected by the fair report privilege.  Further still, the use of an idiomatic phrase like "at the center of" in the headline is figurative in nature, and protected opinion based on the facts disclosed in the Article.  Again, the truth of those reported facts is established by the public record—namely, the SEC filings—of which the Court may take judicial notice on this Motion.

Confined by the undisputed true facts and public record, the only other statements in the Article about which Plaintiff has complained fail as a matter of law to state a defamation claim.  Like the headline, the few other statements specifically identified by Plaintiff accurately reflect the gist of the public record facts, including the MabVax lawsuit and a lawsuit that Plaintiff

himself filed against his former law firm.  These statements are thus, as a matter of law, protected by the fair report privilege.  (*See* Compl. at ¶¶ 4 n. 1, 32; 36(e).)

Plaintiff's other counts—"Commercial Disparagement," "Deceptive and Unfair Trade Practices, "Tortious Interference"—are wholly derivative and duplicative of the meritless defamation claim, and improperly attempt to end run the specific, First Amendment-informed limitations on defamation claims.

For the reasons set forth below, based on the allegations of the Complaint and the public record, Plaintiff's claims fail and must be dismissed with prejudice.

## BACKGROUND

**The Parties.**  Plaintiff alleges that he is "a member of the Bar of the State of New York and is licensed to practice before all State and Federal Courts in New York," and that "between 1982 and 2018, [he] built an extremely successful practice as an attorney representing clients in securities matters," including as a named "partner in the New York law firm, Sichenzia Ross Ference Kesner" ("Sichenzia").  (Compl. at ¶ 12.)

*Barron's*, a publication of Dow Jones, is headquartered in New York, New York.  *See* https://www.dowjones.com/offices/office-in-new-york/.[2]  *Barron's* "publishes a weekly investment magazine" and operates the barrons.com website.  (Compl. at ¶ 14.)

Mr. Alpert, an award-winning journalist, "has been employed by Barron's as a writer and editor since 1984".  (Compl. at ¶ 15, citing https://www.barrons.com/authors/8520 ("His investigations have inspired stock-fraud prosecutions and reforms in such areas as 'backdoor' stock-exchange listings, for-profit colleges, and the Magnitsky Act that sanctions international human-rights violators")).

**The SEC Action.**  As Plaintiff alleges, "[o]n September 7, 2018, after a thorough, multi-year investigation, the SEC filed a civil enforcement action in the United States District Court for the Southern District of New York" (the "SEC Action"), alleging "three highly profitable 'pump-and-dump' schemes perpetrated by" Barry Honig, John Stetson, and other individual and corporate defendants named in the complaint, involving "the stock of three public companies"; while "enriching Defendants by millions of dollars, [the scheme] left retail investors holding

---

[2]  Plaintiff erroneously alleges that *Barron's* is a "Massachusetts corporation, headquartered in Boston" and that it is a "subsidiary" of Dow Jones.  (Compl. at ¶ 14.)  "Barron's Inc." does not exist as a legal entity and Dow Jones, publisher of *Barron's*, is the proper defendant.

virtually worthless shares." (Compl. at ¶ 21.)  *See* Complaint, *U.S. S.E.C. v. Barry C. Honig, et al.*, No. 18-cv-08175, ECF No. 1, at ¶ 1 (S.D.N.Y., filed Sept. 7, 2018) ("SEC Complaint").[3]

The three publicly traded companies are designated in the SEC Complaint as Companies "A," "B" and "C." (*Id.*)  The identities of these companies have been identified, in subsequent SEC filings and otherwise, as MabVax Therapeutics ("MabVax"); MGT Capital Investments ("MGTI"); and Cocrystal Pharma, Inc. f/k/a Biozone Pharmaceuticals ("COCP").  Declaration of Natalie J. Spears ("Spears Decl."), Ex. A.[4]  *See, e.g., id.* Ex. A1, MabVax Form 10-K/A, p. F-41 (filed Oct. 15, 2018) ("In the Complaint, the SEC alleges a variety of misconduct with respect to the Investor Defendants' transactions and/or relationships with three public issuers, including a public issuer identified as 'Company C,' which we understand to be MabVax").

**Public Records Establish Plaintiff's Involvement With the Companies Implicated in the SEC Action, and With Honig and the Other Defendants in That Action.**  Public filings with the SEC establish the following facts with respect to Plaintiff:

- *All three* publicly traded companies whose stock was the subject of the SEC Action used Plaintiff's law firm Sichenzia Ross Ference Kesner as their lawyer—including during the SEC's investigation—with two of those three companies listing Kesner specifically on SEC filings.  *See* examples in Spears Decl., Ex. B.

- Two of those companies, COCP and MabVax, used a stock transfer company by the name of Equity Stock Transfer ("EST").  *See* Spears Decl., Ex. C.  EST was financed and controlled by Plaintiff.  *See id.*, Ex. D.

- SEC filings over the past decade also show that *over two dozen companies backed by Honig or other defendants in the SEC Action used Plaintiff as their lawyer*.  *See* Spears Decl., Ex. E.[5]

---

[3]  A true and correct copy of the SEC Complaint is attached to the Declaration of Rachel Fugate ("Fugate Decl.") as Exhibit 2.

[4]  For the Court's convenience and in the interest of clarity, the Spears Declaration contains excerpts from SEC public records relevant to this Motion, accompanied by Tables that include, for each record, (1) the title of the SEC filing; (2) a description of the relevant portion and where it is located in the document; and (3) a link to the full public record on the SEC's web archive.

[5]  In addition, court records show that Plaintiff has served as counsel for Honig *personally*, including in litigation.  *See, e.g.,* Joint Case Management Stmt., *Fisher v. Biozone*, 3:12-cv-03716, 2017 WL 2822546 (N.D. Cal., filed Apr. 20, 2017) (Sichenzia Ross Ference Kesner and Harvey J. Kesner, Esq., counsel of record for defendants Barry Honig and Michael Brauser).

- SEC filings also show that many of these companies also used EST as their stock transfer agent.  *See* Spears Decl., Ex. F.

**The MabVax Action Against Plaintiff and His Firm.**  Plaintiff's representation of MabVax was the subject of a lawsuit that MabVax filed in California against Sichenzia, Plaintiff, and other Sichenzia lawyers (the "MabVax Action").  The MabVax Action alleges that Honig and Stetson, major investors in MabVax, required MabVax to hire Plaintiff.  Complaint, *MabVax Therapeutics Holdings, Inc. v. Sichenzia Ross Ference LLP, et al.*, No. 37-2018-00045609-CU-PN-CTL, at ¶¶ 30, 31 (Cal. Super. Ct., San Diego Cty., filed Sept. 10, 2018).[6]

Asserting malpractice, breach of fiduciary duty, fraud and other claims, the MabVax Action alleges that Plaintiff and Sichenzia "exploited their positions by looking out for themselves, and for other more-valued clients"—*i.e.*, Honig, Stetson, *et al.*—and "inexcusably put MabVax in harm's way by providing conflicted, self-interested, misleading and improper advice".  (*Id.* at ¶¶ 3, 11.) "Sichenza—led by Kesner and his partners—provided MabVax with misleading legal advice in order to protect the interests of themselves and their other clients (*i.e.* the other [Honig group] Investors)," and caused MabVax to be delisted on the Nasdaq Stock Exchange.  (*Id.* at ¶ 15.)

The MabVax Action alleges—consistent with the public SEC filings—that "Sichenzia and Kesner have worked on numerous transactions with the other [Honig group] Investors during their long relationship—at least five transactions per year," and that "since Kesner first joined Sichenzia in 2009, Sichenzia and Kesner have been inserted as counsel to at least 22 other companies (*i.e.*, other than MabVax), in which Honig and/or Stetson has invested."  (*Id.* at ¶ 38.)[7]

Not only was Plaintiff counsel to MabVax—and closely tied to Honig and other investors named in the SEC Action through numerous representations documented in public SEC filings—

---

[6]  A true and correct copy of the Complaint in the MabVax Action is attached to the Fugate Declaration as Exhibit 3.

[7]  According to the MabVax Complaint, in emails discussing media coverage of the SEC's investigation into possible manipulation of stock in "companies backed by financier Barry C. Honig," Plaintiff's partner Gregory Sichenzia remarked "Just awful did u read . . . mentions every one of Harvey clients he has ever had."  (*Id.* at ¶ 77.)  Among other things, a February 16, 2018 CNBC article about Honig's investment in Riot Blockchain reported that "SEC filings suggest that when Honig began his charge to take over the board, he was represented by lawyer Harvey Kesner of Sichenzia Ross Ference Kesner LLP. A few months later, Kesner's law firm appears on Riot Blockchain's SEC filings. . . . When reached by phone, Kesner said he didn't know anything about Riot Blockchain and Barry Honig and hung up."  (*Id.* at ¶ 71.)

but Plaintiff represented MabVax *in the SEC investigation that led to the SEC Action*, notwithstanding his alleged conflict.  (*Id.* at ¶¶ 3, 8, 80-82, 90.)  MabVax alleges that Plaintiff and Sichenzia "plainly knew or should have known of their conflicted status because they are among the Investors under scrutiny; they had also served as counsel for the Investors in substantially similar matters."  (*Id.* at ¶ 81 n. 14.)

The MabVax Action alleges that Plaintiff and Sichenzia gave bad advice and failed to disclose that the Honig group of MabVax investors—"who were also clients of Sichenzia—were a so-called '13D Group,' subjecting both them and MabVax to heightened disclosure requirements under the federal securities laws."  (*Id.* at ¶ 4; *see also id.* at ¶¶ 44-47.)  The Action further alleges "Sichenzia's illegality and exploitation of MabVax went well beyond false advice . . . In December 2016, Kesner personally revised a submission to a regulator to avoid scrutiny of the Investors' activity".  (*Id.* at ¶ 6.)  MabVax also alleges that Plaintiff breached his fiduciary and ethical duties to MabVax by sharing confidential MabVax information with Honig to allow Honig to maintain control over MabVax, to MabVax's detriment.  (*Id.* at ¶¶ 7, 48-49, 57.)

**The *Barron's* Article.**  On October 4, 2018, Dow Jones published the *Barron's* Article written by Mr. Alpert that is the subject of this Complaint.  (Compl. at ¶ 2.)[8]  The Article was prompted by the SEC Action alleging "pump-and-dump schemes organized by investor Barry Honig," involving "stock in three small companies."  (Fugate Decl., Ex. 1.)

Based on the public record, including the SEC documents and MabVax Complaint discussed above, the *Barron's* Article accurately reports that (1) Plaintiff and/or his firm were counsel to *all three* Honig-backed companies at issue in the SEC Action; (2) the stock transfer company he controlled and financed, EST, was retained by two of those companies[9]; (3) Plaintiff and EST were retained by dozens of other Honig-backed companies; and (4) MabVax was suing Plaintiff and his law firm for malpractice and breach of fiduciary duty, alleging in its Complaint, *inter alia*, that Plaintiff favored the interests of Honig and his associates over those of MabVax.

---

[8]  Kesner's Complaint does not attach the Article, but includes a link to the Article, which was only published online:  https://www.barrons.com/articles/the-lawyer-at-the-center-of-sec-pump-and-dump-case-1538675403.  A true and correct copy of the Article is attached to the Fugate Declaration as Exhibit 1.

[9]  As noted at the end of the Article, "an earlier version of this article said that all three companies used" EST and was corrected.  (Fugate Decl., Ex. 1.)

The Article nowhere states that Plaintiff is a defendant in the SEC Action (Compl. at ¶¶ 22-23), or accuses Plaintiff of being "involved in securities fraud" (*id.* at ¶ 4); in fact, it specifically says his firm's role is "unmentioned" in the SEC Complaint (to which the Article links). Nor does the Article accuse Plaintiff of any other wrongdoing; instead, it accurately reports the allegations in the SEC Action, the MabVax Action, and the undisputed facts about Plaintiff that are part of the public record through SEC filings.

## ARGUMENT

## I. BASED ON THE COMPLAINT AND MATTERS PROPERLY CONSIDERED ON A RULE 12(B)(6) MOTION, THIS CASE SHOULD BE DISMISSED

Based on the Article and related public records, it is clear that Plaintiff's claims are ripe for disposition as a matter of law. *See, e.g., Nix v. ESPN, Inc.*, 772 F. App'x 807, 812 (11th Cir. 2019) ("[w]hen the parties submit allegedly defamatory information to a court, that court 'may determine as a matter of law whether allegedly defamatory publications are "fair and true" reports of official proceedings'"; affirming dismissal) (quoting *Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 457 (E.D.N.Y. 2013)).

To survive a motion to dismiss for failure to state a claim, Plaintiff cannot simply regurgitate labels, conclusions, and "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Davila v. Delta Air Lines, Inc*., 326 F.3d 1183, 1185 (11th Cir. 2003) ("conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal"). Thus, while the Court must take all well-pleaded allegations as true for purposes of determining a motion to dismiss, it need not "take the plaintiff's *interpretation* of the allegedly defamatory words at face value." *Lott v. Levitt,* 556 F.3d 564, 569 (7th Cir. 2009) (italics in original); *see also Nix*, 772 F. App'x at 809.

In ruling on a motion to dismiss, the Court considers the Complaint's attachments and material incorporated by reference. "[A] document need not be physically attached to a pleading to be incorporated by reference into it," *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); where the complaint refers to certain documents "central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). That most certainly includes the Article at issue here, to which the Complaint links and references. Where complaint allegations are contradicted by attached or incorporated material, the latter controls, "and the allegations are

7

nullified." *Degirmenci v. Sapphire–Ft. Lauderdale,* 693 F. Supp. 2d 1325, 1341 (S.D. Fla. 2010).

      The Court may also take judicial notice of matters of public record without the motion being converted into a summary judgment motion. *Universal Express, Inc. v. U.S. S.E.C.,* 177 F. App'x 52, 53 (11th Cir. 2006). Thus, government filings and records of judicial proceedings—such as the SEC filings and MabVax pleadings—are matters of which the court can take judicial notice on a motion to dismiss. *See, e.g., U.S. ex rel. Osheroff v. Humana Inc.,* 776 F.3d 805, 811 n. 4 (11th Cir. 2015) ("Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage"); *FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282, 1297 n. 15 (11th Cir. 2011) ("We are permitted to review the Defendants' SEC filings ourselves in evaluating the sufficiency of the Plaintiffs' allegations. . . a court may take judicial notice of the content of documents filed with the SEC"); *Hubbard v. BankAtlantic Bancorp, Inc.,* 625 F. Supp. 2d 1267, 1279 (S.D. Fla. 2008) ("the Eleventh Circuit has expressly held that a court may judicially notice relevant documents legally required by, and publicly filed with, the Securities and Exchange Commission").

      The courts favor early dismissal of untenable defamation claims because of "the chilling effect" these cases have on First Amendment rights. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation").

      Dismissal is called for here. Both the MabVax Complaint and the SEC filings are publicly filed government records. Plaintiff cannot contest that the Article accurately reports the public record facts, and as a matter of law, the headline of which Plaintiff complains does not, when read in context, accuse Plaintiff of securities fraud. Further, like the Article in its entirety, the headline is plainly protected by the fair report privilege. Defendant cannot, consistent with the First Amendment, be punished for accurately reporting on information the government has made public.

## II.    CHOICE OF LAW—NEW YORK LAW APPLIES

      In this diversity action, the Court applies Florida choice-of law principles. *Michel*, 816 F.3d at 694. In Florida, the "most significant relationship" test determines the applicable law by considering the contacts listed in the Restatement (Second) of Conflict of Laws. *Id.*; *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). Those contacts "include": (a) where the injury occurred, (b) where the conduct causing the injury occurred, (c) the "domicil, residence, nationality, place of incorporation and place of business of

the parties", and (d) where the parties' "relationship, if any, . . . is centered."  Restatement (2nd) of Conflict of Laws § 145(2).[10]  Those contacts all point to application of New York law.

Unquestionably, New York is the center of gravity of this dispute.  The reporting and editing was done from New York[11], about events that took place there—*i.e.,* the SEC Action, filed in the Southern District of New York—for a publication that is headquartered there.

On the other hand, Plaintiff only recently moved to Florida.  His entire professional life was based in New York, and he claims damage to the "personal and professional reputation" he enjoyed "in the community in which he lived and worked"—*i.e.,* New York.  (Compl. at ¶ 12.) His professional reputation was centered in New York, where he is licensed and practiced law from 1982 to 2018, including as "a [named] partner in [a] New York law firm." (*Id.*)[12]  Plaintiff's conclusion that "[a] substantial part of the events giving rise to the claims stated in this action occurred in the Southern District of Florida" is unsupported by any well pleaded fact.  (*Id.* at ¶ 20.)

In *Michel*, *supra*, the Eleventh Circuit applied New York law in a defamation suit by a Florida resident where "the article was published in New York, regarding an event that took place in New York, and that allegedly caused harm to [plaintiff's] business interests in New York," and "[all defendants] are domiciled in New York." 816 F.3d at 694.  Indeed, the plaintiff there did not contest application of New York law, and the same result is required here.

Further, with respect to the place of injury factor, "a plaintiff may suffer greater injury in another state if the defamatory matter 'related to an activity of the plaintiff that is principally located in [that] state,' or 'the plaintiff suffered greater special damages in [that] state than in the state of his domicil.'"  *Nix*, 772 F. App'x at 810 (quoting Restatement § 150).  Such is certainly the case here—New York is both the locus of Plaintiff's activities that were the Article's subject, and his claimed reputational damage.

---

[10]  Courts also consider these contacts in light of the principles in Restatement § 6.  *See Bishop v. Fla. Specialty Paint Co*, 389 So.2d 999, 1001 n.1 (Fla. 1980).  Pertinent § 6 factors include: (1) the interest of other states in the determination of the particular issue, (2) the basic policies underlying the particular field of law, and (3) certainty, predictability and uniformity of result.

[11]  Additional information pertinent to the choice of law determination is found in the Declarations of William Alpert and Bob Rose, submitted in connection with the Alpert Motion.

[12]  Plaintiff is not licensed, and does not practice law, in Florida.  *See* Alpert Motion at n. 8.

The other relevant factors (place the conduct occurred and location of parties) likewise favor New York law because the events reported were centered in New York (*e.g.,* the SEC Action and Plaintiff's law practice), and the reporting and "decision to publish . . . [were] made in New York," and therefore Defendants' "connection to New York . . . is stronger" than Plaintiff's newly established "connection to Florida". *Gubarev v. BuzzFeed, Inc.*, No. 1:17-cv-60426-UU, Corr. Order on Pl. Mot. for Partial Judgment on Pleadings, ECF No. 171, at 8 (S.D. Fla. June 5, 2018). The "place where the parties' relationship is centered" factor is of "neutral weight because the parties did not allege any relationship outside of the defamation suit." *Nix*, 772 F. App'x at 811.

In short, Florida's connection to this case, and any argument for applying Florida law, is weak, while New York's interest in protecting reporters and publishers is strong, particularly under the fair report privilege. Moreover, "applicability of New York defamation law to a New York publication encourages 'certainty, predictability and uniformity of result' and 'ease in the determination and application of the law to be applied.'" *Michel v. NYP Holdings, Inc.,* 2015 WL 1285309, at *3 (S.D. Fla. Mar. 4, 2015), *aff'd in relevant part*, 816 F.3d 686 (11th Cir. 2016) (quoting *Bishop*, 389 So.2d at 1001). Nor would Florida's interests and policies be meaningfully threatened by applying New York's law, particularly since Florida also has a strong fair report privilege and commitment to protecting a free press. *See, e.g., Ortega v. Post-Newsweek Stations, Florida, Inc.*, 510 So.2d 972, 976 (Fla. 3d DCA 1987) (privilege "exists so that the public may be kept informed of the workings of government").[13]

## III.   THE ARTICLE'S HEADLINE CANNOT SUPPORT THE DEFAMATION CLAIM

The Article accurately and truthfully describes Plaintiff's involvement with individuals and companies related to the SEC Action, as documented on the face of public SEC filings, and accurately summarizes the related allegations in the MabVax Action. *Plaintiff's Complaint does not dispute this, nor could he plausibly do so*. Instead, in apparent recognition of the fact that the Article's reporting is not actionable, Plaintiff principally attempts to found his claim solely on the Article's headline ("The Lawyer at the Center of SEC Pump-and-Dump Case"). That he cannot do, for a whole host of legal reasons.

First, the headline is, as a matter of New York law, a non-actionable "fair index" of the Article itself. *See, e.g., Kamalian v. Reader's Digest Ass'n, Inc.*, 29 A.D.3d 527, 528 (2d Dep't

---

[13]   While Defendants are entitled to the benefit of New York law, Plaintiff's claims would fail under Florida law too, and Defendants also cite pertinent Florida law in support of this Motion.

2006) (ordering dismissal).  When the headline here is read in context of the entire Article, as it must be under well-established law, it is a fair and accurate description of the indisputable SEC public record filings referenced and discussed in detail in the Article.  These records reveal that Plaintiff's firm represented all three companies (with Kesner listed specifically in records filed by two of the companies) whose stock was the subject of the alleged "pump and dump" scheme that the SEC investigated and ultimately charged in the SEC Action against the investor group, with whom Plaintiff also has close ties, again as documented by public SEC records.

Furthermore, the headline also is protected by the fair report privilege because it summarizes the Article itself, which in turn is based on public records, including the above-noted SEC filings as well as the MabVax Complaint.  New York's fair report privilege, codified in Section 74 of the New York Civil Rights Law, provides absolute immunity "for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published."  The statute is interpreted liberally "to provide broad protection to news accounts of judicial or other official proceedings."  *Cholowsky v. Civiletti*, 69 A.D.3d 110, 114 (2009).  As with the fair index defense, it is axiomatic under the fair report privilege that the headline must be read together with the Article, and is protected where, as here, it is a "fair and true headnote" of the Article's reporting of public records.  *See, e.g., Idema v. Wager*, 120 F. Supp. 2d 361, 369 (S.D.N.Y. 2000).

Based on the twin pillars of "fair index" and "fair report," the Court should reject as a matter of law Plaintiff's attempt to concoct a defamation claim by divorcing the headline from the text of the accurate and legally protected reporting on public records in the Article.

A.    The Headline Is a Non-Actionable, Fair Index of the Article.

"If the headline is "a 'fair index' of the related news article, it is not actionable as a matter of law"; this "threshold question is one of law for the court, not a question of fact for a jury."  *White v. Berkshire–Hathaway, Inc.*, 10 Misc. 3d 254, 256 (N.Y. Sup. Ct., Erie Cty. 2005); *Kamalian*, 29 A.D.3d at 528 (ordering dismissal).  "To determine if the headline is fair, it and the entire content of the [publication] must be construed together."  *Cole Fischer Rogow, Inc. v Carl Ally, Inc.*, 29 A.D.2d 423, 426 (1st Dep't 1968), *aff'd*, 25 N.Y.2d 943 (1969).  In making this determination it is clear that "[a] newspaper need not choose the most delicate word available in constructing its headline; it is permitted some drama in grabbing its reader's attention, so long as

the headline remains a fair index of what is accurately reported below." *Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*, 603 F. Supp. 2d 584, 589 (S.D.N.Y. 2009).

Here, in addition to accurately reporting the allegations of the MabVax Complaint, the Article truthfully reports the facts established by the publicly-filed SEC records: that Plaintiff's firm was counsel of record for the three publicly traded companies that were the subject of the SEC's securities fraud case against Barry Honig and other investors in those companies (*see* Spears Decl., Exs. A-B); that his stock transfer agency was retained by two of those companies (*see id.*, Exs. C-D); and that Plaintiff's connection to the Honig group defendants was not limited to these three companies—he was the lawyer for dozens of companies backed by the Honig group, over more than a decade (*see id.*, Ex. E). *None of those statements are false.* Plaintiff does not dispute these facts— and could not plausibly dispute them.

Certainly then, it cannot be defamatory—or even unfair—to report on all these publicly established ties and connections under the headline "The Lawyer at the Center of the SEC Pump-and-Dump Case". Indeed, characterizations far less "fair" than the headline at issue here have been held not actionable. *See, e.g., Test Masters*, 603 F. Supp. 2d at 589 (headline "LSAT CRAM 'SCAM' BARED" was "a fair index of the information included in the article" about investigation of plaintiff test preparation business); *Kamalian*, 29 A.D.3d at 528 (headline, "'Doctors' Deadly Mistakes,' when read and evaluated in conjunction with the text it precedes, was a fair index of the article," which discussed plaintiff's history of malpractice complaints) *White*, 10 Misc. 3d at 256 (headline "Unscrupulous operation gouges nursing home," while "a far cry from flattery" was "supported by findings contained in HUD's Inspector General's investigation reported in the news article" and not actionable). As a matter of law, the headline is a "fair index" of the matters reported in the Article and therefore not actionable as defamation.

Furthermore, when read in context, the defamatory meaning Plaintiff tries to ascribe to the headline is not sustainable. Indeed, not only is it required by law that the headline be read together in context with the Article itself, but here, on its face, the headline does not name Plaintiff, does not say that the "Lawyer" has committed any wrongdoing, and indeed, does not affirmatively state in what specific sense the "Lawyer" is at the "Center" of the SEC case, *i.e.,* whether it is because the Lawyer is representing parties to that case, or is a key witness, or in some other sense. Thus, both as a matter of law and the terms of the particular headline at issue here, the headline necessarily requires reference to the Article as a whole. *See, e.g., Triano v.*

*Gannett Satellite Info. Network, Inc.,* No. 09–cv–2497, 2010 WL 3932334, *4 (S.D.N.Y. Sept. 29, 2010) ("a headline that does not directly name the plaintiff is not independently actionable"; the "full text of the article" must be considered) (quoting *White*, 10 Misc. 3d at 256); *Trudeau v. Plattsburgh Publ'g Co.*, 11 A.D.2d 852 (3d Dep't 1960) ("There is nothing in the headline naming or identifying any person. Reading the headline alone no one is defamed").[14]

Here, the full text of the Article makes clear that investors were charged and the "Lawyer" was not—and in fact, points out that Plaintiff's firm was "unmentioned" in the SEC Complaint. Furthermore, the Article supplies a hyperlink to the SEC Complaint itself. Hyperlinked material is treated as part of "the necessary context for [an] allegedly defamatory remark." *Boley v. Atl. Monthly Grp.*, 950 F. Supp. 2d 249, 262 (D.D.C. 2013).[15]

Thus, read in context and its entirety—as it must be—the Article refutes Plaintiff's reading of the headline to accuse him of being "involved in securities fraud." (Compl. at ¶ 4.) Indeed, even where a headline is *on its face untrue*, the New York courts have held is it non-actionable if the text explains and dispels the alleged defamatory meaning. *See, e.g., Triano*, 2010 WL 3932334 at *5 (even if headline "Purchase Man Charged with Felony in Hunting Death" was "literally false, the full context of the article contradicted the headline and was substantially true"); *Trudeau*, 11 A.D.2d at 852 (while headline falsely stated "Man Arrested for Carrying Marijuana," reading "the headline and the article together," it was clear that "the article charged only disorderly conduct against plaintiff"); *Seldon v. Shanken*, 143 A.D.2d 3, 4 (1st Dep't 1988) ("text of the article dispelled any possible misleading meaning of the headlines").

Here, the text of the Article not only dispels the proffered defamatory meaning (the notion that Plaintiff was charged with securities fraud), it explains exactly what is meant by "at the center." That is, as the SEC public record filings accurately reported on in the Article

---

[14]  Again, it is a general rule of defamation law generally "that both the headline and the item to which it is attached are to be considered as one document in determining the effect of an article complained of as being defamatory. They are construed together in deciding whether the article is libelous, to ascertain the character of the libel, and to find against whom the libel is directed." *Cole Fischer*, 29 A.D.2d at 426; *Rubin v. US News & World Report, Inc.*, 271 F. 3d 1305, 1306 (11th Cir. 2001) ("The gist of any statement within a publication or broadcast is found only by reference to the entire context").

[15]  *See also, e.g., McKee v. Cosby*, 874 F.3d 54, 64 (1st Cir. 2017) (defendant's letter provided links to articles from which allegedly defamatory statements were drawn, "enabling readers to examine the sources for themselves and consider the comments in context"; affirming dismissal).

establish, Plaintiff *was* in fact at the center of what Plaintiff characterizes as the investor
"universe" that the SEC investigated and ultimately charged (Compl. at ¶ 36(e))—he or the law
firm that once bore his name was the lawyer for businesses whose stock price the SEC charges
was manipulated, and is a common thread running through the SEC Action and the Honig
constellation of investors.  (*See* Spears Decl., Exs. A-F.)  Plaintiff is without question in the
middle of it all—at the center—and there is nothing inaccurate or unfair about so stating, given the
full context of the Article.

    *Stepanov v. Dow Jones & Co., Inc.*, 120 A.D.3d 28 (1st Dep't 2014) also is instructive:
the court there dismissed a complaint by a businessman and his company (Midland) alleging they
were defamed in a *Barron's* article describing an embezzlement conspiracy involving Russian
businessmen and officials.  Like Plaintiff here, they argued that, by describing the conspirators'
various illegal activities "and noting the links" with Midland, "the article defamed them by
leading readers to believe that Midland was connected to the . . . illegal activity." *Id.* at 34-35.
The court rejected that argument, finding the connections the article described were
"substantially true. Therefore, it is not capable of the defamatory connotation that plaintiffs claim
it carries." *Id.* at 35.[16]

    Dismissal is likewise called for here.  The "at the center" headline is a fair index of the
Article, which reflects the litany of established, undisputed connections between Plaintiff and the
companies and defendants in the SEC Action on the face of SEC public records, and (as
discussed below) is plainly subject to the fair report privilege.  Read in context of the full Article,
the headline is incapable of the defamatory connotation Plaintiff conjures.[17]

---

[16]  The court also dismissed the plaintiff's "defamation by implication" argument because he
failed to make the "rigorous showing that the language of the communication as a whole can be
reasonably read both to impart a defamatory inference and to affirmatively suggest that the
author intended or endorsed that inference." *Id.* at 37-38; *see also Aboutaam v. Dow Jones &
Co., Inc.,* No. 156399/2017, 2019 WL 1359772 (Sup. Ct. N.Y. Cty. Mar. 22, 2019) (dismissing
defamation by implication claim based on headlines).

[17]  In addition to the headline being a fair index of a truthful article, and the Article dispelling
any possible defamatory meaning of the headline, there is nothing "false" in the complained-of
headline.  It is a substantially true precis of the public record's "gist," and would produce no
greater "sting" than reciting Plaintiff's well-established connections with the SEC Action
defendants. *Tannerite Sports, LLC v. NBCUniversal News Group*, 864 F.3d 236, 241-43 (2d Cir.
2017) (affirming dismissal); *Birkenfeld v. UBS AG*, 172 A.D.3d 566 (1st Dep't 2019) (since
statements "were, at a minimum, substantially true," "dismissal of the complaint was
warranted").

**B.    The Headline, Together With The Article, Also Is Protected by the Fair Report Privilege.**

The Article is squarely protected by the privilege codified in the New York fair report statute for reporting on public records and judicial proceedings. That fair report privilege "is absolute 'and is not defeated by the presence of malice or bad faith.'" *Gillings v. N.Y. Post*, 166 A.D.3d 584, 586 (2d Dep't 2018) (affirming dismissal) (quoting *Glendora v. Gannett Suburban Newsp.*, 201 A.D.2d 620, 620 (2d Dep't 1994) (neither omitting plaintiff's "side" nor incorrectly stating that he "could not be reached for comment" could defeat absolute privilege; affirming dismissal)). The courts' liberal application of the fair report privilege means that omissions or slight inaccuracies that do not alter the report's substantial accuracy do not defeat the privilege. *See, e.g., Foley v. CBS Broad., Inc.*, 958 N.Y.S.2d 60 (Sup. Ct. N.Y. Cty. 2006). It is enough that the substance of the article and headline are "substantially accurate." *Alf v. Buffalo News, Inc.*, 21 N.Y.3d 988, 990 (2013) (the language used "should not be dissected and analyzed with a lexicographer's precision") (quoting *Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*, 49 N.Y.2d 63 (1979)).[18]

As a fundamental matter, in applying the fair report privilege (just as with the "fair index" protection) headlines are assessed with reference to the publication *as a whole*. *See Idema*, 120 F. Supp. 2d at 369; *St. Louis v. NYP Holdings, Inc.*, No. 156522/2016, 2017 WL 887255, *1 (Sup. Ct. N.Y. Cty. Feb. 6, 2017). Here, the Article accurately reflects public record facts, including the SEC records and the MabVax lawsuit, and when read in context as a whole, utterly belies Plaintiff's attempt to forge an actionable defamation from the headline alone.

For example, in *Becher v. Troy Publ'g Co.*, 183 A.D.2d 230 (3rd Dep't 1992), the court held headlines identifying plaintiff as one of the defendants in a "Bribery Case" or "Bribery Trial" were a "fair and true headnote of the article[s] . . . entitled to absolute immunity" even though plaintiff was not charged with bribery, because bribery was "the predominant nature of the case as

---

[18] Florida's common law fair report privilege is also broad. It too applies "even if the official documents contain erroneous information" and requires only that the publication be a substantially correct account of information contained therein. "It is not necessary that [the publication] be exact in every immaterial detail or that it conform to the precision demanded in technical or scientific reporting." *Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 502-03 (Fla. 3d DCA 1993). In addition to state fair report privileges, the Article is protected by the First Amendment privilege established by *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 496 (1975) (press cannot be exposed to liability "for truthfully publishing information released to the public in official court records").

a whole" and the articles "correctly stated that plaintiff was charged with conspiracy and making an apparently false sworn statement." *Id*. at 236.

*Alf v. Buffalo News, supra*, concerned a federal investigation of a corporation and related lawsuits. "The newspaper reported that NAC and its owner and chairman, plaintiff Christopher Alf, had admitted that NAC 'cheated' the government over a period of several years in the amount of millions of dollars"; like Plaintiff here, Alf argued that the report was "false and misleading" because it suggested "that plaintiff had personally engaged in wrongful conduct." 21 N.Y.3d at 989-90. The New York Court of Appeals decisively rejected that argument: "When examining a claim of libel, *we do not view statements in isolation*. Instead, '[t]he publication must be considered in its entirety when evaluating the defamatory effect of the words,'" and "viewing the articles as a whole, the average reader would conclude that the company, and not plaintiff, pleaded guilty to wrongdoing." *Id.* at 990 (citations omitted).

Plaintiff's suggestion that the headline accuses him of personally committing "securities fraud" (Compl. at ¶ 4) is likewise totally incompatible with Defendants' accurate reporting on the public record in the text of the Article, which clearly supports the headline's description of a lawyer "at the center of" the SEC Action. Again, that headline simply summarizes the trail of public SEC filings and the publicly filed MabVax Complaint—all of which put Plaintiff at the center of the SEC Action in that he (and/or the firm in which he was named partner) was the lawyer for all three companies that were the subject of that Action, and he had myriad ties through his work as a securities lawyer to Honig and the other named defendant investors.

Thus, "[t]o the extent" Plaintiff contends that "the headline could be misleading to the reader, for the purposes of section 74, any ambiguities and questions would have been resolved by perusing the article." *Idema*, 120 F. Supp. 2d at 369 (headline "Militant Sues Red Hook" was "a 'fair and true' headnote of the article and is privileged under section 74"; article "nowhere describes [plaintiff] as a Communist or as someone on the lunatic fringes of society who seeks to overthrow the Government"); *St. Louis v. NYP Holdings*, 2017 WL 887255, *1 ("Marsh's headline is unfortunate, sensationalist and drafted simply to garner attention. But the headline and the article, when considered together as one document, can only be characterized as a fair and true report").[19]

---

[19] *See also Alan v. Palm Beach Newsp., Inc.*, 973 So. 2d 1177, 1178-80 (Fla. 4th DCA 2008) (reporting on criminal case privileged even though it painted plaintiff, who was ultimately acquitted, in a negative light and was phrased in a way to catch its readership's attention).

As shown by numerous fair report privilege cases like *Idema* and *St. Louis,* courts routinely dismiss claims based on more colorful or incendiary headlines than the headline at issue here. *See also, e.g., Lacher v. Engel*, 33 A.D.3d 10, 17 (1st Dep't 2006) (statements that client was "very poorly served" by attorney who put "'other aims and interests' before the good of the client" were "if anything, an understatement" and "a tame characterization of the allegations" in malpractice complaint). The headline here is plainly protected under New York's fair report privilege as a matter of law, and thus cannot be the basis of a defamation claim.

### C. The Headline's Use of A Figurative Expression ("At the Center") May Also Be Considered Constitutionally Protected Opinion Based on Disclosed Facts.

Notwithstanding that the headline when considered together with the text of the Article as a whole is a nonactionable fair index of the truthful Article and protected by the fair report privilege, the Court may also consider dismissal on the grounds that the headline's use of the loose and figurative expression "at the center" is constitutionally protected opinion based on disclosed facts.

"[O]nly factual statements are actionable as defamation or libel[,]" because "New York law protects derogatory statements which may be categorized as 'opinion' as opposed to 'fact.'" *Chau v. Lewis*, 771 F.3d 118, 128 (2d Cir. 2014). In distinguishing fact from opinion, "statements more likely to be characterized as fact are readily understood by the reader to have a precise, unambiguous and definite meaning and can be objectively characterized as true or false." *Id.*[20] Under both the First Amendment and New York Constitution, "concepts whose content is so debatable, loose and varying, that they are insusceptible to proof of truth or falsity" are protected opinion. *Buckley v. Littell*, 539 F. 2d 882, 894 (2d Cir. 1976); *N.Y. Horse Rescue Corp. v. Suffolk Cty. S.P.C.A.*, 164 A.D.3d 909, 911 (2d Dep't 2018) ("imprecise, subjective characterizations which could not be objectively verified" are "nonactionable expression[s] of opinion"); *Dillon v. City of N.Y.*, 261 A.D.2d 34, 38 (1st Dep't 1999) ("courts will not strain to find defamation where none exists" and "[l]oose, figurative" expressions "are not actionable").

Thus, where statements "may mean different things to different people," they "are not capable of being proven true or false because of their subjective, relative meanings." *Mirage Ent'mnt, Inc. v. FEG Entretenimientos SA*, 326 F. Supp. 3d 26, 37 (S.D.N.Y. 2018) (performer's

---

[20] While New York's constitutional protection for opinion is intended to be broader than the federal constitution's, *see Immuno AG. v. Moor–Jankowski*, 77 N.Y.2d 235, 256 (1991), even under the federal standard, a statement must "contain a provably false factual connotation" in order to be an actionable expression of fact. *Milkovich v. Lorain Jour. Co*., 497 U.S. 1, 19 (1990).

statement that fans "deserve better" than how promoters "treated them" was nonactionable opinion) (citations omitted).[21]  Here, as noted above, the text of the Article which the headline references explains what is meant by "at the center".  But if looking at the headline alone, without reference to the Article, the court can consider that "there is no objective standard" for assessing whether and to what degree Plaintiff was at the "center" of the SEC case.  *Id.*  The expression in the headline was not being used in a mathematical or geometric sense; instead, if anything, it is the kind of loose and figurative speech incapable of precise verification on its own.

Again, the "lawyer" could be "central" for any number of reasons.  That is why the headline must be read in the context of the entire Article.  Not only is it clear from that context that the alleged defamatory meaning (that Plaintiff committed securities fraud) is unsustainable (*see supra* section III(A)), the headline's characterization can otherwise also be considered pure opinion based on disclosed facts.  A statement of opinion is absolutely protected if, as here, it is "accompanied by a recitation of the facts upon which it is based."  *D'Agostino v. Gould,* 158 A.D.2d 577, 578 (2d Dep't 1990).[22]

## IV.    THE ONLY OTHER STATEMENTS IDENTIFIED IN THE COMPLAINT ARE NOT ACTIONABLE EITHER

Aside from the headline, the Complaint identifies only two other specific statements as allegedly false and defamatory:  that the Article purportedly (1) "falsely accused Kesner of failing in his 'gatekeeper' role as a securities lawyer to 'protect the investing public'"; and (2) "falsely represents that Kesner was 'terminated' from the Dallas law firm, Haynes and Boone." (*See* Compl. ¶ 4 & n. 1.)

The "gatekeeper" statement in the Article is: "Securities lawyers and transfer agents are essential gatekeepers under federal regulations meant to protect the investing public".  That is a general observation that is not about Plaintiff, does not state that Plaintiff "failed" in that role, and is simply not actionable.  *Chau*, 771 F.3d at 129 ("statements concern[ing] 'CDO managers' generally" are "not 'of and concerning'" plaintiff and not actionable).  Even if the statement were

---

[21]  *See also Idema*, 120 F. Supp. 2d at 366 (word 'militant' used in headline "is not defamatory as a matter of law," since it "has many meanings and shades of meaning").  *Compare Michel*, 816 F.3d at 696-97 (statements that performer was a "no-show" at a charity event for "his own" foundation was not opinion, as "[h]is attendance or non-attendance is not a matter of subjective opinion; it is a matter of objective empirical fact").

[22]  *See also, e.g., Silverman v. Daily News, L.P.*, 129 A.D.3d 1054, 1055 (1st Dep't 2015); *Prince v. Fox Television Stations, Inc.*, 137 A.D.3d 486, 488 (1st Dep't 2016).

about Kesner, it would in any event be protected as an opinion based on disclosed facts and by the fair report privilege as an accurate reflection of the gist of the public record allegations in the MabVax Action. *See, e.g.,* MabVax Compl. at ¶¶ 3, 11, 15, 63 (discussing Plaintiff's and Plaintiff's firm's breach of their fiduciary, "ethical and professional obligations" as lawyers, to "offer[] their best advice with respect to compliance with the United States securities laws").[23]

The "terminated" statement is also, as a matter of law, a fair report of a lawsuit that *Plaintiff himself* filed against his former law firm—in which he complained of his "wrongful *termination*" from the firm. *See* Complaint, *Kesner v. Haynes and Boone, LLP,* No. 10-cv-4009, ECF No. 1, at ¶ 1 (S.D.N.Y., filed May 14, 2010) (emphasis added) (Fugate Decl. Ex. 4.) Indeed, Plaintiff should, by all rights, be estopped from contradicting his own allegations in that action in these proceedings. *See Slater v. U.S. Steel Corp.*, 871 F. 3d 1174, 1180 (11th Cir. 2017) (equitable doctrine of judicial estoppel "prohibit[s] parties from deliberately changing positions according to the exigencies of the moment") (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)).

## V. PLAINTIFF'S TAG-ALONG TORT CLAIMS ARE DUPLICATIVE AND BARRED

Plaintiff's remaining claims for Commercial Disparagement (Count II), Deceptive and Unfair Trade Practices (Count III), and Tortious Interference (Count IV) are barred on their face because they are each premised solely upon the allegedly defamatory statements in the Article.

"New York law considers claims sounding in tort to be defamation claims . . . where those causes of action seek damages only for injury to reputation, [or] where the entire injury complained of by plaintiff flows from the effect on his reputation.'" *Chao v Mt. Sinai Hosp.,* 476 F. App'x 892, 895 (2d Cir. 2012) (citations omitted). Thus, duplicative tort claims that are based on the same underlying facts as a defamation claim must be dismissed. *Id.; Goldman v. Barrett*, 733 F. App'x 568, 570 (2d Cir. 2018) ("New York courts treat harm stemming from injury to reputation

---

[23]  In the part of his Complaint where he attempts to show Defendants "acted with actual malice," Plaintiff pastes an excerpt from his counsel's demand letter, generally alleging that "the details of hiring by MabVax are false" (Compl. at ¶ 36(e)). The assertions in that demand letter are not properly pleaded in the Complaint and should not be considered. *See Tannerite Sports,* 864 F.3d at 251 (allegedly defamatory statements must be specifically pleaded and "vague, general references to documents outside the complaint" cannot take the "place of specific allegations putting the court and the defendant on notice of the particular claims asserted"). In any event, the asserted "details" are all accurately reported as summaries of the Complaint in the MabVax Action and are quintessentially matters subject to the fair report privilege, which cannot be defeated by actual malice. *Gillings*, 166 A.D.3d at 586; *Glendora*, 201 A.D.2d at 620.

as sounding in defamation, and do not recognize separate torts as additional causes of action";
affirming dismissal); *Fleisher v. NYP Holdings, Inc.*, 104 A.D.3d 536, 538-39 (1st Dep't 2013)
(dismissing ancillary tort claims where "[t]he underlying allegations fall within the ambit of"
defamation claim); *Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 224-25 (S.D.N.Y. 2013) (same).[24]
Application of this principle ensures that a plaintiff cannot plead around the requirements of
defamation law as a way to evade valid defenses to a defamation claim, like the fair report
privilege. *See Fridovich*, 598 So. 2d at 69-70 (a plaintiff cannot "make an end-run around"
defamation defenses by "simply renaming the cause of action and repleading the same facts").

Here, Counts II-IV are based on exactly the same set of operative facts as Count I, the
defamation claim. These duplicative counts must also be dismissed.

Plaintiff's Complaint should be dismissed in its entirety with prejudice.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Defendant respectfully requests oral argument on its
Motion to Dismiss. Because the motion raises important First Amendment considerations and
dispositive issues of law, Defendant believes the Court's decision-making process would be
aided by oral argument. Defendant estimates that a total of one hour will be required.

Dated: August 26, 2019

                                            Respectfully submitted,

/s/ *Natalie J. Spears*                     /s/ *Rachel E. Fugate*
Natalie J. Spears (*pro hac vice*)          Rachel E. Fugate (Florida Bar. No. 144029)
Gregory R. Naron (*pro hac vice*)           Kendall O. Pfeifer (Florida Bar No. 105445)
Jacqueline A. Giannini (*pro hac vice*)     SHULLMAN FUGATE PLLC
DENTONS US LLP                              2101 Vista Parkway, Suite 4006
233 S. Wacker Dr.                           West Palm Beach, FL 33411
Chicago, IL 60606                           Telephone: (561) 429-3619
Telephone: (312) 876-8000                   rfugate@shullmanfugate.com
natalie.spears@dentons.com                  kpfeifer@shullmanfugate.com
gregory.naron@dentons.com                   *Attorneys for Defendant Dow Jones &*
jacqui.giannini@dentons.com                 *Company, Inc.*

---

[24] Likewise under Florida law, claims premised on allegedly defamatory statements must be
brought as defamation claims and not as separate tort claims. *See Fridovich v. Fridovich*, 598
So. 2d 65, 69-70 (Fla. 1992); *Ovadia v. Bloom*, 756 So. 2d 137, 140-41 (Fla. 3d DCA 2000).

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 26, 2019, a true and correct copy of the foregoing was served by CM/ECF on all counsel or parties of record on the service list and by U.S. Mail on Defendant Teri Buhl, 1725 York Avenue #30G, New York, NY 10128

.

/s/ *Rachel E. Fugate*
Rachel E. Fugate
Florida Bar No. 0144029