**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HARVEY J. KESNER,

                 *Plaintiff*,

      vs.

DOW JONES & COMPANY, INC. d/b/a
BARRON'S,

WILLIAM "BILL" ALPERT,

-and-

TERI BUHL,
               *Defendants*.

No. 20-cv-03454 (PAE)

---

**DEFENDANT TERI BUHL'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISMISS FOR FAILURE TO STATE A CLAIM**

---

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**.................................................................................... ii

**INTRODUCTION**.................................................................................................. 1

**BACKGROUND**.................................................................................................. 2

**A.  Procedural History**......................................................................................2

**B.  Certain Background Facts**........................................................................... 3

**STANDARD OF REVIEW**................................................................................... 4

**ARGUMENT**....................................................................................................... 4

**I.   Plaintiff Fails to State a Cognizable Claim for Defamation**......................... 4

   **A.  Standard for a Claim of Defamation**........................................................5

   **B.  The Alleged Statements by Defendant are Substantially True or are Non-Actionable Opinion**....................................................................... 7

      a.   <u>Applicable Law Finds in Favor of Dismissing Defamation Claim</u>.................8

   **C.  All the Articles Are Protected by Absolute Privilege Under New York Law** .......14

      a.   <u>The Headlines Are Protected by The Fair Index Doctrine and Must Be Read in Conjunction with The Article</u>............................. 14

      b.   <u>Fair Report Privilege Protects Defendants Fair and True Reporting</u>............... 16

   **D.  The Defendant's Tweets are Protected Opinion and/or Privileged** .......18

**II.  Counts 2-5 Should be Dismissed as They are Duplicative of the Defamation Claim** ................................................................................... 20

**III. The Plaintiff's Conduct and Pleadings Are Improper** ................................. 21

**CONCLUSION**.................................................................................... 23

## **TABLE OF AUTHORITIES**

**Cases**                                                                          **Page(s)**

*Adelson v. Harris,*
    973 F.Supp. 2d 467 (S.D.N.Y. 2013). ........................................................ 10-11

*Antonios A. Alevizopoulos & Assocs., Inc. v. Comcast Int'l Holdings, Inc.,*
    100 F. Supp. 2d 178 (S.D.N.Y. 2000). ........................................................ 21

*Biro v. Conde Nast,*
    883 F. Supp. 2d 441 (S.D.N.Y. 2012). ........................................... 7-8, 11, 13, 19

*Cholowsky v. Civiletti,*
    69 A.D.3d 110 (2d Dep't 2009). ..................................................................14

*Cummings v. City of New York,*
    No. 19-cv-7723 (CM) (S.D.N.Y. February 24, 2020). ............................... 16

*D'Annunzio v. Ayken, Inc.,*
    8765 F.Supp. 2d 211 (E.D.N.Y. 2012). ...................................................... 17

*Eros Intl. PLC v. Mangrove Partners,*
    2019 NY Slip Op. 30604 (Sup. Ct. N.Y. County March 8, 2019). ............................18-19

*Fuji Photo Film USA, Inc. v. McNulty,*
    669 F.Supp. 2d 405 (S.D.N.Y. 2009). ...................................................... 5-7. 18

*Gargiulo v. Forster & Garbus Esqs.,*
    651 F.Supp. 2d 188 (S.D.N.Y. 2009). ...................................................... 6

*Gertz v. Robert Welch Inc.,*
    418 U.S. 323 (U.S. 1974). ...................................................................... 6

*Guccione v. Hustler Magazine, Inc.,*
    800 F.2d 298 (2d Cir. 1986). .................................................................. 7

*Holy Spirit Ass'n for Unification of World Christianity v New York Times Co.,*
    49 N.Y. 2d 63 (1979). ............................................................................ 16

*Idema v. Wagner,*
    120 F.Supp. 2d 361 (S.D.N.Y. 2000). ...................................................... 11

*Kamalian v. Reader's Digest Ass'n, Inc.,*
    29 A.D. 3d 527 (2d Dep't 2006). ...........................................................9, 14

*Levin v. McPhee*,
    119 F.3d 189 (2d Cir. 1997). ................................................................................. 8, 10-11

*Mann v. Abel*,
    10 N.Y.3d 271 (2008). .............................................................................................. 7

*McKenzie v. Dow Jones & Co.*,
    355 F. App'x 533 (2d Cir. 2009). ........................................................................ 20-21

*Miller v. Gizmodo Media Group*,
    407 F. Supp. 3d 1300 (S.D. Fla. 2019). ................................................................... 17

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964). .................................................................................................. 6

*Rakofsky v. Washington Post*,
    39 Misc. 3d 1226(A) (Sup. Ct. N.Y. County 2013). ................................................ 17

*Steinhilber v. Alphonse*,
    68 N.Y.2d 283 (1986). ........................................................................................... 7-8

*Stepanov v. Dow Jones & Co.*,
    120 A.D. 3d 28 (1st Dep't 2014). ............................................................................ 13

*Tannerite Sports, LLC v. NBCUniversal New Group*,
    864 F.3d 236 (2d Cir. 2017). ................................................................................. 7, 9

*Thai v. Cayre Grp., Ltd.*,
    726 F.Supp. 2d 323 (S.D.N.Y. 2010). ...................................................................... 5

*Triano v. Gannett Satellite Info. Network, Inc.*,
    No. 09–cv–2497, 2010 WL 3932334 (S.D.N.Y. Sept.29, 2010). ............................... 14

**Statutes**

New York Civil Rights Law § 74. ........................................................................*passim*

**Rules**

Fed. R. Civ. P. 12 ................................................................................................4

Fed. R. Civ. P. 11 ..............................................................................................23

**Other Authority**

*Disqualification of Felons and Other "Bad Actors" from Rule 506 Offerings and Related Disclosure Requirements*, U.S. Securities and Exchange Commission, Sept. 19, 2013, *available at* https://www.sec.gov/info/smallbus/secg/bad-actor-small-entity-compliance-guide.htm.   ....................................................................................................11

Everdell, Abigail, *On Eve of Trial, Gizmodo Wins Dismissal of Ex-Trump Staffer's Libel Suit - Fair-Report Privilege Bars Claims*, JDSUPRA, Mar. 2, 2020, *available at* https://www.jdsupra.com/legalnews/on-eve-of-trial-gizmodo-wins-dismissal-88403......... 17

Defendant Teri Buhl, by and through her undersigned counsel, hereby submits this memorandum of law in support of her motion to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure (FRCP) 12(b)(6), for failure to state a claim upon which relief can be granted. Ms. Buhl also joins Defendants Barron's motion to dismiss in part, as specified below.

## INTRODUCTION

Ms. Buhl is a longtime investigative journalist reporting primarily on the financial industry.[1]  Ms. Buhl's work has been published in numerous publications, including the *New York Post*, *New York Magazine*, *Forbes Magazine*, *The Atlantic*, *Fortune*, *New York Observer*, *Business Insider*, Hearst Newspapers, and *Growth Capitalist*. On the basis of her reporting for *The Atlantic* on Bear Sterns' role in the subprime mortgage crisis, Ms. Buhl was featured in the *Frontline* documentary film *The Untouchables*.

As is now common practice among journalists, Ms. Buhl currently works as a freelance reporter for *Cannabis Law Report*, but also, some of Ms. Buhl's reporting is published on her online news publication, *www.teribuhl.com* (the "Website").  Ms. Buhl is dedicated to exposing wrongdoing in the financial industry and she has reported on misconduct that has led to over half a dozen criminal charges or SEC/FINRA enforcement actions.  Her uncovering of misdeeds by some of the titans of Wall Street led *Huffington Post* to name her as one of the "25 Most Dangerous People in Financial Media (Dangerous in a good way …)." These 25 people were journalists who were not afraid to hold accountable

---

[1] New York Supreme Court Judge W. Franc Perry ruled the reporting by Ms. Buhl on *teribuhl.com* was that of a professional journalist.  *Anonymous v. Anonymous*, No. 655887/2018, p. 2 (N.Y. Sup. Ct. 03/06/2019).

bad actors in the finance industry.

The plaintiff has clearly brought this case to bully, harass, and ultimately censor Ms. Buhl by burdening her with the cost of legal defense until she abandons her effective reporting of Plaintiff Kesner.  Such lawsuits are colloquially called SLAPP suits or a strategic lawsuit against public participation.  Although New York does not currently endorse anti-SLAPP motions,[2] outside those directed at a plaintiff who is a public applicant or permittee, this Court should see this lawsuit for what it is — an intimidation tactic brought by Kesner to chill Ms. Buhl's freedom of speech.  For the reasons stated below, Defendant respectfully requests the motion be granted, and for this Court to dismiss this complaint against her, with prejudice.

## **BACKGROUND**

### A.  Procedural History

This case was originally filed in the Southern District of Florida on May 31, 2019. [Compl., ECF 1].   The amended complaint was filed on September 16, 2019 (the "Complaint"). [Am. Compl., ECF 36].  Subsequently, Defendants filed a joint motion to dismiss for improper venue or for transfer to the Southern District of New York.   Defendant Dow Jones, while joining the motion to change venue, also filed a motion to dismiss for failure to state a claim.  [Defs. Motion to Dismiss, ECF 43, Sept. 30, 2019].  Initial discovery occurred between Plaintiff and Defendant Dow Jones earlier this year. [*See* Status Report, ECF 74, April 16, 2020].  Shortly thereafter, the court granted Defendants' motion to change venue to SDNY on May 1, 2020. [Order, ECF 76, May 1, 2020].

---

[2] The New York State legislature passed Assembly Bill A5991A, which, if signed by the Governor, would expand New York's Anti-SLAPP statute to include such cases as the one at issue here. See https://www.nysenate.gov/legislation/bills/2019/a5991.

Once transferred, this Court held a conference on May 21, 2020 and issued a subsequent order setting forth, among other things, that all discovery is stayed pending resolution of Defendants Dow Jones and William Alpert's joint motion to dismiss and directing Defendant Buhl to file her motion to dismiss by June 18, 2020. [Order, ECF 90].   On June 18, 2020, the Court granted Defendant Buhl's pro se request for a 14-day extension to file her motion to dismiss to allow her to locate counsel. [Mem. Endorsement, ECF 94].  Shortly thereafter, on June 30, 2020, the Court granted Defendant Buhl's counsel a 30-day extension to review the case and file this current motion.  [Order, ECF 98].

## B.  Certain Background Facts

The Plaintiff alleges that Defendant Buhl defamed and caused other actionable harm to the Plaintiff as a result of a number of articles and tweets described below and set forth in the incorporated Declaration of Wesley J. Paul (Paul Decl.).  The majority of such articles and tweets relate to or derive from an SEC action filed on September 7, 2018 (the "SEC Complaint"). The SEC Complaint alleged, among other things, that Barry Honig and others named in the SEC Complaint engaged in several "pump and dump" schemes to defraud investors. *See U.S. S.E.C. v. Barry C. Honig*, No. 18-cv-08175, ECF No. 1 (S.D.N.Y., filed September 7, 2018); [Paul Decl., Ex. C].

With respect to the Plaintiff's role as counsel to Mr. Honig, as well as the Plaintiff's role to certain other parties named or specified in the SEC Complaint, we direct the Court to Defendant Dow Jones's memorandum of law supporting thier motion to dismiss.  [Defs. Mem. Supp. Mot. Dismiss, ECF 43, p. 5-6, Sept. 30, 2019].

## STANDARD OF REVIEW

The legal standards applicable to motions to dismiss under Fed. R. Civ. P. 12(b)(6) brought to this Court are well-established and succinctly summarized in Defendant Barron's and Defendant Alpert's motion to dismiss, [*Id.* at p. 7-9], and are also applicable to Defendant Buhl. Accordingly, Defendant Buhl joins with Defendant Barron's and Defendant Alpert's (collectively, the "Other Defendants") motion to dismiss briefing related to the 12(b)(6) standards applicable to this motion.

## ARGUMENT

For the reasons below, each and every one of Plaintiff's claims is facially deficient. Because the Plaintiff has no viable claim, the pleading should be dismissed in its entirety.

## I.   Plaintiff Fails to State a Cognizable Claim for Defamation

The Complaint cites to seven articles by Defendant Buhl that allegedly contain defamatory statements.  These articles are titled and dated as follows:

- *Kesner's Out: Why is Barry Honig's Securities Lawyer Retiring*, dated 8/29/2018.
- *Honig Deals lead to FINRA Investigation of Laidlaw & Co.*, dated 10/31/2018.
- *Honig's Puppet CEO Elliot Maza settles with the SEC*, dated 03/26/2019.
- *Hudson Bay Capital tied to Barry Honig Pump and Dump Ring: MabVax $MBVX*, dated 04/11/2019.
- *Judge says Honig's attorney Harvey Kesner can be Sued for Fraud and Malpractice: $MBVX*, dated 05/14/2019.
- *New Emails show attorney Harvey Kesner aided Defrancesco in Questionable Cannabis Stock Deal: $APHA $SOLCF*, dated 06/07/2019.
- *SEC looking at New Names in Barry Honig Pump and Dump Scheme: $MGTI $MBVXQ*, dated 08/20/2019.

The Complaint also cites to four statements published on Defendant Buhl's account, with an internet handle named "buhlreports, on the popular social media site Twitter.  The reporting

and/or statements made by Defendant Buhl which are primarily cited by the Plaintiff are referred to herein as the "Buhl Materials." [Paul Decl., ¶ 3-5, Ex. A-B, Aug. 3, 2020].

However, when citing to the Buhl Materials, the great majority of the allegations found in the amended complaint do not detail with any particularly the specific offensive statements or language giving rise to these claims.  Rather, Plaintiff offers conclusory statements and employs a sensationalist tactic of alleging various harms that have occurred to the Plaintiff which were purportedly the result of Defendant Buhl's reporting and/or related statements.  For example, the Plaintiff repeatedly alleges millions of dollars of reputational harm done by Defendant Buhl and yet, as argued below, the Plaintiff <u>fails to provide a single instance</u> where Defendant Buhl included an untrue statement of fact in her reporting.

This kind of amorphous pleading is questionable at best and arguably renders the Complaint, [ECF 36], dismissible on its face because this lack of specificity requires, for the purpose of this motion, Defendant Buhl to speculate on what exactly was legally defamatory in the various articles and posts written by Defendant Buhl.  *See Thai v. Cayre Grp., Ltd.*, 726 F.Supp. 2d 323, 329 (S.D.N.Y. 2010) (defamation claim "is only sufficient if it adequately identifies 'the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated.'").

Nevertheless, under <u>any</u> established standard of New York law, the Plaintiff fails to state a claim for defamation and therefore, Count I should be dismissed with prejudice.

### A.  Standard for a Claim of Defamation

For a plaintiff's defamation claim to survive a motion to dismiss pursuant to Rule 12(b)(6), the plaintiff must sufficiently allege: "(1) a false statement about the [complainant]; (2) published to a third party without authorization or privilege; (3) through fault amounting to at

least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused `special damages." *Fuji Photo Film USA, Inc. v. McNulty*, 669 F.Supp.2d 405, 411 (S.D.N.Y. 2009) (alterations in the original) (quoting *Gargiulo v. Forster & Garbus Esqs.,* 651 F.Supp.2d 188, 192 (S.D.N.Y. 2009). This complaint should be dismissed for two prominent reasons. First, the pleading fails to allege any specific factual statements that are false. Rather, the complaint offers examples that are taken out of context and which amount to no more than protected opinion. Second, even if the Plaintiff's allegations satisfy the first element, such statements found in the articles are protected by absolute privilege under New York law.

Specifically, with respect to the potential areas of defamatory content where the Plaintiff could possibly raise a defamation claim, there are only three areas where this could occur: (1) in the headlines of the various articles; (2) in the body of the articles; or (3) in other statements made by Defendant Buhl. Predominantly, each of these areas is governed by legal principles that are well established under New York law, which are the "fair index" doctrine (as applied to headline) and the "fair report" privilege (as applied to the body of an article). Any other statements alleged in the amended complaint fall completely under protected opinion.[3]

---

[3] The Plaintiff repeatedly claims that Defendant Buhl acted with malice against the Plaintiff. [Am. Compl., ECF 36, ¶¶ 22, 25, 34, 36, 62]. Similar to the Plaintiff's defamation claims in general, the Plaintiff offers no substantiation for these claims aside from making conclusory statements. The Plaintiff appears to regard actual malice as such a prominent element in his defamation claim. Actual malice is a heightened standard of proof that must be shown by public persons (or limited purpose public persons) in order to show defamation. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964) ("A public person must prove that the defamatory "statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."); *see also*, *Gertz v. Robert Welch Inc.*, 418 U.S. 323 (U.S. 1974) (limited purpose public figures are those who "… have thrust themselves to the forefront of particular controversies in order to influence the resolution of the issues involved."). As argued herein, the Plaintiff's defamation claims fail even without the imposition of the heightened evidentiary standard imposed upon public figures or limited purpose public figures.

Lastly, in order for the Court to properly consider the fair report privilege, it is important that the Court exercise its right to take judicial notice over certain matters of public record. *See Biro v. Conde Nast*, 883 F. Supp. 2d 441, 478 (S.D.N.Y. 2012) (The court took judicial notice of certain proceedings to "consider the allegations and statements in the court records in order to determine whether the Article provides a 'fair and true' report of those allegations and statements . . . ." (citing *Fuji Photo Film U.S.A.*, 669 F.Supp. 2d at 414-15). This can be done without the motion being converted into a summary judgment motion. The great majority of Plaintiffs libel claims relate to the Defendant's reporting on certain judicial and administrative actions, it is thus imperative that the Court take judicial notice of these actions.

### B. The Alleged Statements by Defendant are Substantially True or are Non-Actionable Opinion

The first element of a defamation claim involves two issues: 1) whether a statement is false; and 2) whether a statement is a verifiable fact or non-actionable opinion. First, under New York law, it is "fundamental that truth is an absolute, unqualified defense to a civil defamation action." *Guccione v. Hustler Magazine, Inc.,* 800 F.2d 298, 301 (2d Cir. 1986) (citation omitted). It is well established that truth does not mean complete accuracy, but rather, if a statement is "substantially true," a claim for libel cannot stand. *E.g. Tannerite Sports, LLC v. NBCUniversal New Group*, 864 F.3d 236, 242-43 (2d Cir. 2017). "A statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* (quoting *Biro*, 883 F.Supp. 2d at 458.

Second, under both New York and federal law, statements of pure opinion are not actionable as defamation. *See Mann v. Abel,* 10 N.Y.3d 271, 276 (2008). The New York Court of Appeals explained that "[a] 'pure opinion' is a statement of opinion which is accompanied by a recitation of the facts upon which it is based. An opinion not accompanied by such a factual

recitation may, nevertheless, be 'pure opinion' if it does not imply that it is based upon

undisclosed facts. . . . " *Steinhilber v. Alphonse,* 68 N.Y.2d 283, 289 (1986); *see also Levin v.*

*McPhee*, 119 F.3d 189, 197 (2d Cir. 1997) ("When the defendant's statements, read in context,

are readily understood as conjecture, hypothesis, or speculation, this signals the reader that what

is said is opinion, and not fact.").  New York courts look to three factors to make a determination

of whether an alleged statement is an assertion of fact or a nonactionable opinion, these are: (1)

whether the specific language in issue has a precise meaning which is readily understood; (2)

whether the statements are capable of being proven true or false; and (3) whether either the full

context of the communication in which the statement appears or the broader social context and

surrounding circumstances are such as to signal readers or listeners that what is being read or

heard is likely to be opinion, not fact.  *E.g. Biro*, 883 F.Supp. at 460.  In this case, the amended

complaint offers several statements that are either substantially true or statements that are non-

actionable opinion. The following section will go through each of the alleged defamatory articles

and statements to detail exactly why Plaintiff's complaint fails as a matter of law.

    a.   <u>Applicable Law Finds in Favor of Dismissing Defamation Claim</u>

    First, the Plaintiff claims that Defendant Buhl defamed the Plaintiff in an article

published on August 29, 2018, titled, "*Kesner's Out: Why is Barry Honig's Securities Lawyer*

*Retiring*." ("August 2018 Article").  [Paul Decl., Ex. A-1].  Although not exactly clear from the

complaint, the Plaintiff seems to take issue with two parts of the article.  First, the complaint

alleges that since Buhl reported Kesner had changed his residency to Florida, she implied that

Plaintiff "had engaged in wrongdoing and deliberately fled and sought sanctuary in Florida."

[Am. Compl., ¶ 9].  However, the specific parts of the article Plaintiff complained of are either

true or "substantially true."  For instance, Defendant Buhl correctly makes factual reporting that,

among other things, (a) the Plaintiff's name was removed as a name partner at his former firm, (b) the Plaintiff was the counsel of record of Riot Blockchain and MabVax and both companies reported they are under SEC investigation, and (c) voting records indicate that the Plaintiff kept a condominium and voted in Florida, which is a "homestead state." The Plaintiff fails to allege these, or any other facts, are false. *See Tannerite Sports, LLC*, 864 F.3d at 245 (illustrating that falsity is an element of defamation which requires a plaintiff in New York to identify how the "statement was false to survive a motion to dismiss").

Based on these and other pertinent facts reported in this well-researched article, Defendant Buhl proffers her opinions that the reported events, ". . . could signal an SEC charge or settlement coming in the near future for both men [i.e. Barry Honig or the Plaintiff]" and, later in the same article, that ". . . in the case of an SEC fine they can't come and take your home [due to Florida's status as a homestead state]." The factual statements in this article, which are not alleged to be false, reasonably support the opinions offered by Defendant Buhl and, thus extinguish any implication that they were based on undisclosed facts. *See Kamalian v. Reader's Digest Ass'n, Inc.*, 29 A.D. 3d 527, 528 (2d Dep't 2006) (dismissing defamation claim).

A second statement the Complaint highlights in the August 2018 Article was Buhl's statement that:

> I believe there could be issues of unregistered shares being sold or restricted shares being released when they should be held in restriction. It's hard to get restricted stock to the DTC for free trading unless you have a friendly transfer agent not doing due diligence on if the shares are legal to trade in the first place.
>
> [Am. Compl., ¶ 24; Paul Decl., Ex. A-1].

Contrary to the Plaintiff's allegation that Defendant Buhl "insinuated that Kesner was involved in the sale of unregistered securities," a full reading of the paragraph illustrates how Plaintiffs

stretch the purported statements to fit their narrative.  The statement was not "of and concerning"
the Plaintiff but was made in the context of discussing Barry Honig and the stock transfer agent
named Equity Stock Transfer, LLC.

Moreover, Defendant Buhl does not, for instance, state anywhere in the article that the
Plaintiff is under an SEC investigation or that the Plaintiff has been found guilty of any legal
violation.  Indeed, the paragraph specifically states that "[i]n recent filings we see Kesner put in
writing that he doesn't have control over [Equity Stock Transfer] but only lends the firm
money."  Thus, dispensing any insinuation that Kesner was involved or that Defendant endorsed
such an insinuation.    Lastly, when taken in context, such a statement is "readily understood as
conjecture, hypothesis, or speculation."  *See Levin*, 119 F.3d at 197.

In the article titled "*Honig Deals lead to FINRA Investigation of Laidlaw & Co.*,"
Plaintiff takes issue with the following paragraph:

> His crew of alleged bad actors – Team Honig – has been chronicled
> for    years here at *TERIBUHL.com* and    by    Chris    Carey
> at *Sharesleuth* and Bill Albert at *Barron's*.  It consists of biotech
> billionaire and philanthropist Philip Frost, his fellow co-investing
> partners Michael Brauser/John O'Rourke/Marc Groussman, John
> Ford – the promoter who wrote favorable analysis on stocks,
> priming them for the 'pump' of Honig's 'pump and dump' – and
> Harvey Kesner, a deal lawyer from SIRF LLP linked to a number of
> Honig 's investments.
>
> [Am. Compl., ¶ 24; Paul Decl., Ex. A-2].

The Plaintiff seems to take particular issue with the phrase "alleged bad actors."  [*Id.*].
This phrase, in context of the paragraph, is simply nothing more than a true or substantially true
statement.  First, the paragraph has hyperlinks to three other articles.  This court has found that
hyperlinks are a valid mechanism for attribution in defamation claims.  *See Adelson v. Harris*,
973 F.Supp. 2d 467, 483-85 (S.D.N.Y. 2013) ("The hyperlink is the twenty-first century

equivalent of the footnote for purposes of attribution in defamation law, because it has become a well-recognized means for an author or the Internet to attribute a source"), *aff'd*, 876 F.3d 413 (2d Cir. 2017).  Therefore, the use of the adjective "alleged" signals to the reader that the term following ("bad actors") is supposition based on what is found in the attributed documents.  In context, the term "alleged bad actors" is simply a true statement that is not actionable as defamation, or at the very least, signals to the reader that the defamatory term is one of opinion and not fact. *See Levin,* 119 F.3d at 197.

Even if the Plaintiff only intends to focus on the phrase, "bad actors," those words, in context, are not reasonably susceptible of a defamatory meaning.  In the case of *Idema v. Wagner*, 120 F.Supp. 2d 361 (S.D.N.Y. 2000), the court determined that the word "militant" in describing the plaintiff was non-actionable because the "word itself has many meanings and shades of meaning," and therefore, an "average reader would be more likely to conclude that the word was used as an opinion about plaintiff, rather than as a fact."  *Id.* at 366.  The same is true here. "Bad actor" can mean different things to different people. As the term "bad actor" is also a term the SEC uses itself when describing those disqualified from Rule 506 offerings.[4]

Further, the phrase "bad actors," in the context of the article, is "not an assertion of fact that can be proved false," and thus, a defamation claim resting on the phrase should be dismissed.  *See Biro*, 883 F.Supp. 2d at 460.  Lastly, a related article cited in the Complaint is titled "*Honig's Puppet CEO Elliot Maza settles with the SEC*," and the Complaint alleges the article "labeled Kesner a 'bad actor.'" [Am. Compl., ¶ 24; Paul Decl., Ex. A-3].  Once again, for the reasons just explained, the phrase "bad actor" fails to state anything more than protected

---

[4]*See Disqualification of Felons and Other "Bad Actors" from Rule 506 Offerings and Related Disclosure Requirements*, U.S. Securities and Exchange Commission, Sept. 19, 2013, *available at* https://www.sec.gov/info/smallbus/secg/bad-actor-small-entity-compliance-guide.htm.

opinion, and when read in context, was not actually "of and concerning" the Plaintiff specifically.

Plaintiff takes issue with another statement, first found in the article titled *Hudson Bay Capital tied to Barry Honig Pump and Dump Ring* (April 2019 Article) and then again in the article titled *Judge says Honig's attorney Harvey Kesner can be sued for Fraud and Malpractice* (May 2019 Article). [Paul Decl., Ex. A-4, A-5]. The speculative statement at issue, which was taken out of context in the Complaint, is: "It's unclear if [Plaintiff] is a confidential informant for the government or if charges will be brought against him in the future." [Am. Compl. ¶¶ 12-13, 24; Paul Decl., Ex. A-4]. Then, in the May 2019 Article, Defendant reports on the denial of the Plaintiff's motion to dismiss a complaint filed by one of the Plaintiff's former clients for legal malpractice and also details Defendant Buhl's initial communications with Mr. Biss, co-counsel for the Plaintiff. [Paul Decl., Ex. A-5]. It is in this context that Buhl's writes: "Yesterday I received a letter from a lawyer from Virginia representing Harvey Kesner asking for some of my reporting on Kesner leaving his law firm and my speculation that the SEC is looking at Kesner also or he is working as a confidential witness for the government to be taken down." *Id.* (emphasis added).

Based on these statements, the Complaint alleges that, "Buhl implied or insinuated that the reason Plaintiff would have been left out of the SEC Action was that Plaintiff breached or was willing to breach the duty of confidence to his clients by assisting the SEC in prosecuting his own clients." [Am. Compl., ¶ 13]. Plaintiff also alleges that he was not asked to be a confidential informant in the SEC investigation. *Id.* The statement, in context, does lend itself to being proved wrong. After all, Ms. Buhl writes, "[i]t is unclear if . . ." and "my speculation . . ." before each plead statement. Plaintiff fails to allege how her unknowing speculation was false.

12

To the extent Plaintiff tries to plead "defamation by implication," New York law requires him to "make a <u>rigorous showing</u> that the language of the communication as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference." *Stepanov v. Dow Jones & Co.*, 120 A.D. 3d 28, 37-38 (1st Dep't 2014) (emphasis added).  Here, the Complaint fails to show either, rather, it merely asserts in conclusory terms that Defendant "implied" the alleged inference—it pleads no factual allegations in support thereof, nor does it dispute the underlying facts in the article.  *See Biro*, 883 F.Supp. at 468-69 (holding that "if the plaintiff does not actually challenge the factual bases giving rise to that inference, and that inference could not reasonably arise from the challenged statements alone, there can be no action for defamatory implication.").  This is a far cry from the "rigorous showing" that is required for a claim of defamation by implication.  *Stepanov*, 120 A.D. 3d at 37-38.  Thus, in both instances, Plaintiff has failed to state a cognizable claim.

Finally, the Plaintiff cites another article published by Defendant Buhl on August 20, 2019 titled "*Honig Pump and Dump SEC Looking at New Names in Barry Scheme*." [Paul Decl., Ex. A-7].  The amended complaint alleges that "Buhl falsely stated that the motion to compel was evidence that the SEC intended or was taking action against Plaintiff, and reported it as so." [Am. Compl., ¶ 14].  Defendant Buhl makes no statement in the August 2019 Article (or in any other publication) that affirmatively states that the Plaintiff is under investigation by the SEC.  In fact, Defendant Buhl actually states the <u>opposite</u>.  Conveniently omitted from the Plaintiff's pleadings is the fact that Defendant Buhl reports in the August 2019 Article that "Attorney Harvey Kesner was not named in the original subpoena sent to MGT Capital in September 2016…"  [Paul Decl., Ex. A-7].  These mischaracterizations and misstatements about Defendant

Buhl's reporting evidences the Plaintiff's lack of good faith and a clear fault in his *prima facie* case.

### C.  All the Articles Are Protected by Absolute Privilege Under New York Law

The second element of defamation demands that even if there is a defamatory statement of fact, authors are protected from libel if the defamatory statement is protected by the common law fair index doctrine or under the fair report privilege set forth in New York Civil Rights Law § 74.  As is the case here, all of the Buhl Materials report on various administrative or judicial proceedings.  The fair reporting of governmental proceedings is precisely the purpose of § 74. *See Cholowsky v. Civiletti,* 69 A.D.3d 110, 114 (2d Dep't 2009).  Thus, Plaintiff's defamation claim should be dismissed.

> a.  The Headlines Are Protected by The Fair Index Doctrine and Must Be Read in Conjunction with The Article

Under New York law, it is very difficult for a defamation claim to arise merely out of a headline.  The headline of an article must be read together with the article. *See Kamalian*, 29 A.D. 3d at 528.  Even if a headline is not factually true, that headline is not defamatory if that headline, when read together with the rest of the article clarifies, explains or even dispels the headline. *See Triano v. Gannett Satellite Info. Network, Inc.*, No. 09–cv–2497, 2010 WL 3932334, *5 (S.D.N.Y. Sept.29, 2010).  Logically, a headline itself cannot form the basis of actionable defamation unless there was either no article accompanying that headline or if the accompanying article presented no facts whatsoever that provided context for the headline.

The rationale for this high bar for defamation based on headlines is simple. A headline, by its very nature, is both short in length and intended to drive interest to a story, and thus, cannot have full exposition of the matters specified by the headline.  The Plaintiff speculatively pleads that Defendant Buhl purposely manipulates headlines and possibly other text as

"clickbait"[5] in order to drive interest and viewers to Defendant Buhl's website, but to date, no jurisdiction has recognized a claim of "clickbait defamation" as an exception to the general rule that the entirety of the article and materials needs to be read in order to evaluate a defamation claim.

Thus, Plaintiff's allegations that certain headlines constitute defamation by themselves fails to state a claim. For example, the Complaint cites an article titled "*New Emails show attorney Harvey Kesner aided Defrancesco in Questionable Cannabis stock Deal*," ("June 2019 Article"), [Paul Decl., Ex. A-6], for the allegation that Defendant Buhl "falsely accused Kesner of aiding and abetting fraudulent transfers of assets in violation of SEC disclosure rules." [Am. Compl., ¶ 25].

First, nowhere in the article did Defendant actually accuse Plaintiff of a crime and therefore the headline is not "reasonably susceptible of a defamatory meaning." Rather, when reading the headline in the context of the article, Defendant Buhl accurately reports that certain investors were suing an investor named Andy Defrancesco which is the basis for the "questionable stock deal." The June 2019 Article makes further accurate and undisputed factual statements that Plaintiff was writing emails on behalf of Defrancesco and his family in connection with some of the alleged questionable stock deals. The reporting of the emails originated in an article written by the Defendant and published on Cannabis Law Report, which was referenced and hyperlinked in the article multiple times.[6] The most significant aspect of Plaintiff's pleading, in this regard, is that he does not dispute the existence, truth, or accuracy of

---

[5] Clickbait is a term attributed to a headline designed to make readers want to click on an article or other hyperlink. https://www.merriam-webster.com/dictionary/clickbait.

[6] The article containing the emails is available at: https://cannabislaw.report/us-lawyer-harvey-kesner-aided-accused-stock-fraudster-defrancesco-in-canadian-cannabis-company-stock-deal.

these emails in the Complaint.  Therefore, the headline is a fair index of the article, which is

itself based on true or "substantially true" information.  The other statement cited by the Plaintiff

in the June 2019 Article is also both substantially true, and also a clear example of a non-

actionable opinion, as it relates to Defendant Buhl's interpretation of the emails sent back and

forth between Plaintiff and a "U.S. broker dealer."  For these many reasons, Plaintiff's

defamation claim under this article should be found lacking and be dismissed.

### b.  Fair Report Privilege Protects Defendants Fair and True Reporting

Having established that headlines by themselves rarely constitute legal defamation, New

York laws relating to articles themselves favor Defendant Buhl's reporting.  As set forth in New

York Civil Rights Law § 74, the "fair report privilege" provides a defamation lawsuit cannot be

found against any person making a "fair and true report of any judicial proceeding, legislative

proceeding or other official proceeding."  This includes proceedings of the Securities Exchange

Commission, which is the regulatory body issuing the proceedings as reported by Defendant

Buhl.

Furthermore, New York follows longstanding views that "fair and true" does not mean

exactitude or verbatim reporting. Substantially accurate news reporting is sufficient.  "For a

report to be characterized as 'fair and true' within the meaning of the statute, thus immunizing its

publisher from a civil suit sounding in libel, it is enough that the substance of the article be

substantially accurate." *Holy Spirit Ass'n for Unification of World Christianity v New York Times

Co.,* 49 N.Y. 2d 63, 67 (1979).  In this manner, "fair and true" is substantively similar to the

views set forth by the U.S. Supreme Court's "substantial truth doctrine." *See Cummings v. City

of New York,* No. 19-cv-7723 (CM) (S.D.N.Y. February 24, 2020).

16

Section 74 is broadly interpreted in scope and includes reporting on judicial opinions/proceedings. *See, e.g.*, *Rakofsky v. Washington Post*, 39 Misc. 3d 1226(A) (Sup. Ct. New York County 2013), (where the Court held that a report regarding a judge's ruling on a motion was entitled to this privilege).  Moreover, Section 74 reporting does not even have to apply directly to the proceeding at issue.  In *D'Annunzio v. Ayken, Inc.*, 8765 F.Supp. 2d 211 (E.D.N.Y. 2012), a speaker at a press conference following a judicial proceeding was afforded the protections under § 74 when such speaker made various comments relating to the underlying sexual harassment claims that were part of the lawsuit in question.  Even jurisdictions outside New York interpreting § 74 recognize its breadth. *See, e.g.*, Everdell, Abigail, *On Eve of Trial, Gizmodo Wins Dismissal of Ex-Trump Staffer's Libel Suit - Fair-Report Privilege Bars Claims*, JDSUPRA, Mar. 2, 2020 (reporting that "… Judge Cecilia M. Altonaga granted summary judgment to Gizmodo and Krueger on the basis of New York's fair-report privilege. The court clarified that the statute, Section 74 of the Civil Rights Law, applies to sealed court documents (with one narrow exception not applicable in this case) and reaffirmed that the privilege's "fair and true" standard must be applied liberally), *available at* https://www.jdsupra.com/legalnews/on-eve-of-trial-gizmodo-wins-dismissal-88403; *see also Miller v. Gizmodo Media Group*, 407 F. Supp. 3d 1300 (S.D. Fla. 2019).

In this case, all of the Defendant's articles relate to various judicial proceedings against companies that are in some way connected to Plaintiff and the reporting of these various proceedings is in the public interest.  For example, the article, *Honig Pump and Dump SEC Looking at New Names in Barry Scheme*, is directly reporting on the filing of a motion to compel by the SEC against MGT Capital.  [Paul Decl., Ex. A-7].  In the motion to compel, specifically Exhibit A of the motion to compel, the SEC is requesting documents from MGT Capital relating

to the Plaintiff.  The article is a fair and true report of that motion to compel, and as misconstrued

by the Plaintiff, not only reports about Kesner but also others listed that the SEC is requesting

documents on.  *See Fuji Photo Film U.S.A.*, 669 F.Supp 2d at 411-12.  The section 74 privilege

is absolute and is not defeated by allegations of malice or bad faith, as suggested by Plaintiff.

*See id.*

### D.  The Defendant's Tweets are Protected Opinion and/or Privileged

As with many of the articles, the tweets at issue signal to the average reader that

Defendant Buhl is expressing her opinion.  Defendant Buhl tweeted the following statements:

1. The illegal back room deals and intimidation Honig and attorney Harvey Kesner did with BioZone (company A in SEC lawsuit) were egregious and the SEC sat back and watched it happen

2. teribuhl.com has suffered a DDOS attack. It's down until I can move it to a private server. This is on the heels of Honig and Defrancesco's attorney Harvey Kesner suing me 4 reporting on him. Donations for web hosting are needed. Paypal donation is teribuhl@gmail.com

3. SEC is trying to force $MGT CEO to turn over possible evidence on attorney Harvey Kesner's role in Honig P&D scheme along with Hudson Bay partners, Iroquois Capital Richard Abbe and stock promoter Drew Ciccarelli

4. @SichenziaRoss past & current lawyers the SEC is seeking info on in the Barry Honig P&D case: Tara Guarneri-Ferrara, Avital Even-Shoshan, Arthur Marcus, Jay Kaplowitz, and Honig's main lawyer Harvey Kesner.

   [Paul Decl., Ex. B].

Although postings on social medial sites do not have a presumption of opinion, the court must

still rely on the three factors when determining between statements of opinion and those false

statements of fact.

First, regarding the context of the statements, three of the four tweets link to articles that

are also at issue here.  In a recent case in the New York Supreme Court, the court, in dismissing

certain defamation claims, found that because the underlying articles were not defamatory, any "tweets that do nothing more than broadcast those articles do not take on a defamatory character." *Eros Intl. PLC v. Mangrove Partners*, 2019 NY Slip Op. 30604 (Sup. Ct. N.Y. County March 8, 2019). Thus, if this Court finds that the articles themselves are not defamatory, the claims of defamation regarding the tweets should also be dismissed. However, even if the Court should find that the tweets themselves provide additional commentary, the statements must be read in context with the articles. *See id.*

The first tweet which is linked to an article detailing a California case concerning a company called BioZone. A fair reading of the actual comment shows that it is just an opinion and "does not imply that it is based upon undisclosed facts." Rather, it is commentary, based upon her public reporting of BioZone since 2016. Further, this tweet is a fair and true reporting of the Biozone litigation.

The second tweet is true and is otherwise not susceptible of a defamatory meaning. The Plaintiff tries to hide behind an "implication" but it does not save the flawed pleading since the Complaint does not dispute the underlying facts, which are 1) Defendant's website suffered a DDOS attack; and 2) it happened shortly after this suit was brought against her in Florida. Because the amended complaint does not refute these facts, which Plaintiff cannot do, any inference by the reader constitutes nothing but nonactionable opinion of the author. *See Biro*, 883 F.Supp. 2d at 467-468 (holding that "when an author fully sets forth the factual basis for a particular view (and that factual basis is not challenged as false), then the author's conclusion constitutes nonactionable opinion." (citations omitted)). Further, there is nothing to suggest that Defendant intended or endorsed the implication. Without the author's intention to endorse the implication, which must be found in the context of the statement, no claim for defamation by

implication exists. *See id.* at 465 (". . . a plaintiff must show that the language 'affirmatively suggest[s] that the author intends or endorses' the defamatory inference.") (citation omitted). For these reasons, Plaintiff has failed to properly assert defamation.

The third and fourth tweets are in reference to the SEC action against MGT Capital. A fair reading of the statements does not establish any kind of false statement being made and are proved substantially true if you read the tweets in context with the article, *SEC looking at New Names in Barry Honig Pump and Dump Scheme*. As detailed in the last section, the article in question is regarding a motion to compel filed by the SEC against MGT Capital. In that motion to compel, the SEC is requesting documents from MGT Capital relating to the Plaintiff. [CITE]. Therefore, not only are the statements substantially true, but it is also protected by the fair report privilege under § 74 because it is a fair and true report on the SEC's motion to compel.

In conclusion, Plaintiff has failed to establish any *prima facie* claim for defamation. The four statements published on Twitter amount to nothing more than substantially true statements, non-actionable opinion, or are protected by absolute privilege pursuant to § 74. This Court should dismiss.

## II. <u>Counts 2-5 Should be Dismissed as They are Duplicative of the Defamation Claim</u>

In Counts II-IV, Plaintiff brings claims for commercial disparagement, deceptive and unfair trade practices, and tortious interference. The underlying facts pled by the Plaintiff against Defendant Buhl relating to Count I (Defamation) appear to be identical to those giving rise to Count II (Commercial Disparagement), Count III (Deceptive and Unfair Trade Practices) and Count IV (Tortious Interference). These are tort claims which are duplicative of the defamation claim. "Where the factual allegations underlying the prima facie tort cause of action

relate to the dissemination of allegedly defamatory materials, that cause of action must fail."
*McKenzie v. Dow Jones & Co.*, 355 F. App'x 533, 536 (2d Cir. 2009).

The application of applicable law relating to the dismissal of Counts II through V are contained in Defendant Barron's and Defendant Alpert's motion to dismiss, [Defs. Mem. Supp. Mot. Dismiss, ECF 43, p. 19-20], and also apply here to Defendant Buhl, and, accordingly, Defendant Buhl joins with Defendant Barron's and Defendant Alpert's arguments to dismiss Counts II – V in the Complaint.

Moreover, it is well settled under New York law that there is "no substantive tort of conspiracy" and therefore, "[i]n order to state a claim for conspiracy . . . there must be allegations of an independent actionable tort." *Antonios A. Alevizopoulos & Assocs., Inc. v. Comcast Int'l Holdings, Inc.*, 100 F. Supp. 2d 178, 187-88 (S.D.N.Y. 2000). In this case, the Plaintiff's complaint alleges no additional facts to sustain a claim for common law conspiracy. Regardless, dismissal of Count I (Defamation) will render moot Count V (Common Law Conspiracy).

### III.    The Plaintiff's Conduct and Pleadings Are Improper

Finally, we express our significant concerns regarding the conduct of the Plaintiff and his counsel in this case. The Complaint contains not only gross mischaracterizations, but misstatements of fact that we believe crosses the line from zealous advocacy to dishonesty, and includes improper attacks on Ms. Buhl, who initially proceeded pro se in this case when it was improperly filed in Florida. By way of example, the Plaintiff pleads in the Complaint that Defendant Buhl, "In multiple blogs [sic], Buhl wrote that 'the SEC is looking at Kesner also or he is working as a confidential witness for the government.'" [Am. Compl., ¶ 12]. These statements, however, are patently false. In fact, Defendant Buhl writes in the April 2019 article,

21

unambiguously, that "It's unclear if he [Kesner] is a confidential informant for the government or if charges will be brought against him in the future."  [Paul Decl., Ex. A-4].  This statement of pure opinion is reiterated next month by Defendant Buhl in a May 2019 article where Buhl writes, "Yesterday I received a letter from a lawyer from Virginia representing Harvey Kesner asking for some of my reporting on Kesner leaving his law firm and my speculation that the SEC is looking at Kesner also or he is working as a confidential witness for the government to be taken down." [*Id.*, Ex. A-5 (emphasis added)].  The omission of relevant words and/or passages in order to give false meaning to claims is not artful pleading.  It is lying.

In a narrative intended to paint a picture of Defendant Buhl as a disreputable party, the Plaintiff cites a Huffington Post article, "25 Most Dangerous People in Financial Media."  [Am. Compl., ¶ 18].  This article is cited by the Plaintiff in an obvious attempt to negatively focus on the "Dangerous" implication of this article as it relates to Defendant Buhl. This Huffington Post article, however, is actually complimentary of Defendant Buhl.  This Article notes, "Believe me, if you're up to no good in the financial services biz, you want Teri and her instinct for fraud-busting to be as far away from you as possible."  For purposes here, this example further illustrates the Plaintiffs (and his counsels') distortion of the actual facts in order to file baseless and frivolous claims against Defendant Buhl.

Perhaps most egregiously, the Plaintiff, without any recitation of relevant facts in the Complaint, affirmatively state that the Defendants engage in stock fraud. ("They [Defendants Buhl and Alpert] have turned Barron's… into a tool for illegal short selling. Buhl and Alpert masquerade as reporters, while working on behalf of short sellers in the dark underbelly of finance." [Am. Compl., ¶ 9].  Such false, wholly unsupported, irrelevant and unjustified

statements in the Complaint have no apparent purpose other than to inflame passions and distract from the issues in this case.

We, respectfully, ask that the Court take these matters under its advisement.  We remind the Court that it may, on its own motion, issue orders to show cause as to why parties should not be admonished or sanctioned.  Fed. R. Civ. P. 11(c)(3).  We believe that the deficiencies described above can also serve as a basis for a Rule 11 motion for sanctions.  An admonition issued by the Court for the record warning all parties against making objectively untruthful statements may also be helpful to help ensure the continued smooth administration of this case.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed, with prejudice, in its entirety.

Dated: August 03, 2020
       New York, New York

Respectfully submitted,

Wesley J. Paul, Esq.
Paul Law Group, LLP
902 Broadway, 6th Floor
New York, NY 10010
Tel: (646) 278-9955
Fax: (646) 514-6829
wpaul@paullawgrp.com
*Attorney for Defendant Tari Buhl*