IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------------x
                                          :
HARVEY J. KESNER                          :
                                          :
        Plaintiff,                        :
                                          :
v.                                        :          Case 1:20-cv-03454-PAE
                                          :
                                          :
DOW JONES & COMPANY, INC.                 :
     d/b/a BARRON'S et al                 :
                                          :
        Defendants                        :
-------------------------------------------x
```

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT BUHL'S MOTION TO DISMISS

Plaintiff, Harvey J. Kesner ("Kesner"), by counsel, respectfully submits this Memorandum in Opposition to the motion to dismiss pursuant to Rule 12(b)(6) filed by defendant, Teri Buhl ("Buhl") [*ECF No. 104*].

### I.  INTRODUCTION

This action involves knowingly false and defamatory statements published about a securities attorney by Dow Jones & Company d/b/a Barron's ("Barron's")[1] and by blogger Teri Buhl.  For its part, Barron's falsely accused Kesner of being at the "Center" of a multi-year "pump-and-dump" scheme involving 3 companies and 20 defendants and failing in his "gatekeeper" role as a securities lawyer to "protect the investing public." [*ECF No. 36 ("Am. Compl."), ¶¶ 2, 8, 15, 20, 22*].  For her part, Buhl published multiple

---

[1]    This Memorandum will refer to Barron's and its reporter Bill Alpert collectively as "Barron's".

false and defamatory statements that accused Kesner of crimes and improprieties, falsely

implied that Kesner was the subject of an investigation by the Securities and Exchange

Commission ("SEC"), and imputed to Kesner dishonesty, ethical misconduct, lack of

integrity, and an unfitness to be a securities attorney.  The following statements by Buhl

are at issue:

- In an August 29, 2018 blog (updated on September 5, 2018), Buhl stated that the removal of Kesner's name from his law firm and Barry Honig's ("Honig") resignation from the Board of Pershing Gold "could signal an SEC charge or settlement coming in the near future for both men." [*Am. Compl.*"), *¶¶ 9, 10, 24*]

  In the same blog, Buhl stated that "[Kesner] has also made an apparent move to claim Florida as his home state.  Florida often becomes a home for people with judgments or government fines lobed [sic] on them because it is a 'homestead state'.  This means in the case of bankruptcy or say an SEC fine they can't come and take your home." [*Id.*]

  In the same blog, Buhl stated that "I believe there could be issues of unregistered shares being sold or restricted shares being released when they should be held in restriction.  It's hard to get restricted stock to the DTC for free trading unless you have a friendly transfer agent not doing due diligence on if the shares are legal to trade in the first place." [*Id.*]

- In an October 31, 2018 blog, Buhl stated that "[Honig's] crew of alleged bad actors – Team Honig – has been chronicled for years here at *TERIBUHL.com* and by Chris Carey at *Sharesleuth* and Bill Albert at *Barron's*.  It consists of biotech billionaire and philanthropist Philip Frost, his fellow co-investing partners Michael Brauser/John O'Rourke/Marc Groussman, John Ford – the promoter who wrote favorable analysis on stocks, priming them for the 'pump' of Honig's 'pump and dump' – and Harvey Kesner, a deal lawyer from SIRF LLP linked to a number of Honig 's investments." [*Am. Compl., ¶ 24*]

- In a March 27, 2019 tweet, Buhl stated that "[t]he illegal back room deals and intimidation that Honig and attorney Harvey Kesner did with Biozone … were egregious and the SEC sat back and watched it happen." [*Am. Compl., ¶ 24*]

- In a March 26, 2019 blog (updated March 29, 2019), Buhl stated that Kesner was "pushed out of his law firm as a named partner last year". [*Am. Compl., ¶ 24*]

  In the same blog, she labeled Kesner a "bad actor".[2] [*Id.*]

- In a April 11, 2019 blog, Buhl accused Kesner of being part of the "Team Honig pump and dump ring". [*Am. Compl., ¶ 24*]

  In the same blog, Buhl stated that "Kesner and Prag are not named defendants in the SEC lawsuit, although Kesner's actions are detailed in the complaint as an unnamed lawyer.  Kesner has disappeared from the microcap stock scene since the SEC brought their enforcement action but has not been bared as an attorney.  It's unclear if he is a confidential informant for the government or if charges will be brought against him in the future." [*Id.*; *see also ¶¶ 12-13*]

  In the same blog, Buhl republished the Barron's article, and stated that "Bill Alpert of Barron's wrote a well read and detailed story about the lawsuit called "*The Lawyer at the Center of the SEC Pump and Dump Case*". [*Id.*]

- In a May 14, 2019 blog, Buhl again republished the Barron's article, and stated that "Attorney Kesner was profiled last year in a Barron's article for his questionable role with MabVax and Barry Honig." [*Am. Compl., ¶ 11*]

---

[2]     Buhl chose her words carefully.  As Buhl recognizes, the term "bad actor" refers to a person who has been disqualified from participating in exempt securities offerings because, *inter alia*, he has been (i) convicted of a felony or misdemeanor in connection with the purchase or sale of a security or involving the making of a false filing with the SEC; (ii) is subject to an order, judgment or decree of any court of competent jurisdiction that restrains or enjoins him from engaging or continuing to engage in any conduct or practice in connection with the purchase or sale of any security or involving the making of any false filing with the SEC; (iii) is subject to an order of the SEC entered pursuant to section 15(b) or 15B(c) of the Securities Exchange Act of 1934 that bars such person from being associated with any entity or from participating in the offering of any penny stock; or (iv) is subject to any order of the SEC that orders the person to cease and desist from committing or causing a violation or future violation of any scienter-based anti-fraud provision of the federal securities or section 5 of the Securities Act of 1933. *See* 17 C.F.R. § 230.506.

In the same blog, Buhl stated that "I broke the news he was leaving the law firm that bore his name as partner. People inside the firm were talking about Kesner being forced out … rushed to remove any resemble [sic] of ties to attorney Kesner taking down his profile and press releases touting his legal work.  They also quickly changed the name of the firm removing Kesner's name."
[*Id.*]

In the same blog, Buhl stated that "Honig was charged by the SEC in September for being the ring leader of a pump and dump ring that netted him and his co-defendants at least $27 million.  Kesner is not a named defendant in the SEC lawsuit but the SEC details a lawyer allegedly aiding Honig's securities fraud.  That lawyer is believed to be Harvey Kesner."
[*Id.*]

In the same blog, Buhl states that Kesner "is either trying to harass an independent jouranlist [sic] or it's something even more troubling."
[*Id.*]

In the same blog, Buhl stated "Kesner recently moved his main residence to South Florida which is a homestead state.  Meaning your home can't be seized if you have judgments or government fines against you.  Kesner had previously lived in New Jersey for decades."
[*Id.*]

- In a June 7, 2019 blog, with the headline, "**New Emails show attorney Harvey Kesner aided Defrancesco in Questionable Cannabis stock Deal**", Buhl accused Kesner of aiding and abetting fraudulent transfers of assets in violation of SEC disclosure rules.  Buhl also stated that "[w]hen the U.S. broker dealer saw attorney Harvey Kesner was pushing to get the shares through the U.S. clearing system call [sic] the DTC the transaction's legitimacy was challenged."
[*Am. Compl., ¶ 25*]

In the same blog, Buhl directed readers to "Read here to get a behind the scenes glimpse of how parts of the alleged securities fraud was run." Clicking the hyperlink instantly publishes the following statement about Kesner accompanied by a picture of Kesner:

## US Lawyer, Harvey Kesner, aided accused stock fraudster DeFrancesco in Canadian Cannabis Company stock deal

*****



*[Am. Compl., ¶ 25]*

●    On July 25, 2019, Buhl tweeted that she had "suffered a DDOS attack … on the heels of … Harvey Kesner suing me 4 reporting on him".
*[Am. Compl., ¶ 25]*

●    On August 20, 2019, Buhl tweeted that the SEC was "trying to force $MGT CEO to turn over possible evidence on attorney Harvey Kesner's role in Honig P&D scheme along with Hudson Bay partners, Iroquois Capital Richard Abbe and stock promoter Drew Ciccarelli."
*[Am. Compl., ¶ 25]*

●    In an August 20, 2019 blog, entitled, "**SEC looking at New Names in Barry Honig Pump and Dump Scheme**", Buhl stated that Kesner "has made statements in other court filings and in press reports that he does not think he is under SEC investigation.  The new court filing could show otherwise."
*[Am. Compl."), ¶14]*.

●    On August 21, 2019, Buhl tweeted that "the SEC was "seeking info … in the … P&D case … [on] Harvey Kesner."
*[Am. Compl., ¶ 25]*

Kesner alleges that the qualities disparaged by Barrons and Buhl – Kesner's veracity, honesty, integrity, ethics, confidentiality, and performance as a securities attorney – are peculiarly valuable to Kesner and are absolutely necessary in the practice and profession of any securities lawyer.  Kesner states that Barron's and Buhl's long-running false and defamatory statements injured him in his business and profession as a securities attorney,

causing Kesner to lose clients, lose standing in his profession, suffer a permanent disruption in his successful practice, lose business opportunities, and experience a high degree of pain, mental suffering and distress. [*Am. Compl., ¶ 21*].

Kesner commenced this action on May 31, 2019 in the United States District Court for the Southern District of Florida.  On September 16, 2019, he filed an amended complaint, alleging claims of defamation, commercial disparagement, deceptive acts and unfair practices in trade or commerce, tortious interference with contract and business expectancies, and common law conspiracy.  Barron's and Buhl moved to dismiss Kesner's amended complaint for improper venue pursuant Rule 12(b)(3) of the Federal Rules of Civil Procedure or to transfer the case to this District.  That motion was granted and on May 1, 2020, the case was transferred to this Court pursuant to 28 U.S.C. § 1406(a).  On August 3, 2020, Buhl filed a motion to dismiss Kesner's claims pursuant to Rule 12(b)(6).[3]

The matter is before the Court on Buhl's motion to dismiss.  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). [*Am. Compl., ¶¶ 37, 39, 40, 42, 43*].  For the reasons stated below, the Court should deny Buhl's motion.

## II.  <u>STANDARD OF REVIEW</u>

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.  The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in

---

[3]     On September 30, 2019, Barron's filed a motion to dismiss Kesner's amended complaint pursuant to Rule 12(b)(6). [*ECF Nos. 40, 43*].  On October 14, 2019, Kesner filed his opposition to Barron's motion to dismiss. [*ECF No. 48*].  Barron's filed its reply to Kesner's opposition on October 21, 2019. [*ECF Nos. 50-51*].

order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).   A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555 (citations omitted).   Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.*   In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.   Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).[4]

### III.   <u>BACKGROUND</u>

Harvey Kesner is 62 years-old.   He is a private individual.   He graduated from the State University of New York (Binghamton) in 1979 with a Bachelor of Science in management.   He obtained his Juris Doctorate from American University, Washington College of Law, in 1982, and a Master's Degree in Business Administration-Finance from American University in Washington, D.C. in 1984.   Kesner has served as a director and officer of many corporations.   He is a member of the Bar of the State of New York and is licensed to practice before all State and Federal Courts in New York.   Kesner

---

[4]        Rule 12(d) of the Federal Rules of Civil Procedure provides that if, on a motion under Rule 12(b)(6), "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.   All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."   Buhl's memorandum in support of motion to dismiss presents matters outside the pleadings. [*See, e.g., ECF No. 105, p. 1*].   The Court should convert the motion to one for summary judgment under Rule 56, and deny the motion without prejudice and allow the parties to develop and submit evidence.

began his long career as an attorney/examiner for the United States Securities and Exchange Commission ("SEC").  Kesner reviewed registrations, filings and reports under the federal securities laws, public offerings, mergers, proxy solicitations and contests primarily in high technology, manufacturing and insurance industries.  He prepared agency responses to no-action letters and interpretive requests on securities law regulatory issues.  He also participated in enforcement referrals and investigations for violations of regulatory, compliance and reporting obligations.  Between 1982 and 2018, Kesner built an extremely successful practice as an attorney representing clients in securities matters.  Kesner was a partner in the New York law firm, Sichenzia Ross Ference Kesner, which adopted his name in 2016.  The firm consistently ranked as one of the top law firms in the nation for issuer, investor and private placement-agent legal counsel.  Kesner's practice focused on finance, mergers and acquisitions, and public company representation.  He has extensive experience in financing and counseling late-stage private companies transitioning to public company status through initial public offerings and alternative public offerings.  Kesner's expertise includes counseling already public companies in SEC filings, compliance (including Sarbanes Oxley) and regulatory reporting, registered public offerings, private offerings, PIPEs, venture capital, leveraged buy-outs, restructurings, workouts, and day-to-day operational and regulatory issues.  He served as an Arbitrator for the New York Stock Exchange ("NYSE") and the Financial Industry Regulatory Authority ("FINRA") in numerous securities and employee disputes. He was a frequent speaker on legal developments and evolving financial products and markets.  Kesner enjoyed an untarnished personal and professional reputation in the community in which he lived and worked, with clients, with professionals at his firm,

with colleagues in the law and the securities industry, and with his many friends.  It took Kesner a life-time to earn his reputation and standing.  It took the Defendants but a moment to destroy Kesner.  As was known and intended, the Defendants' defamation spread like wildfire throughout the Internet and social media, causing Kesner to be ostracized, causing enormous loss of clients, loss of business, loss of long-time friendships, and causing Kesner other actual damages, including insult, pain, embarrassment, humiliation, mental suffering and permanent and irreversible injury to his reputation. [*Am. Compl.*, *¶¶ 7, 37-38, 61*]

In his amended complaint, Kesner alleges that Barron's reporter, Bill Alpert, and Buhl acted in concert to defame Kesner and destroy his career as a securities attorney. Kesner identifies the participants in the conspiracy, and the role each played in the defamation campaign.  Kesner describes the common purpose of the scheme, and identifies the false statements published by Barron's and republished by Buhl in furtherance of the conspiracy. Kesner describes the Defendants' motive and alleges that Barron's and Buhl published the false and defamatory statements with actual malice: that is, with knowledge of falsity and/or with reckless disregard for the truth. [*Am. Compl.*, *¶¶ 1, 3, 6, 9, 16, 17, 19, 22, 24, 26, 31, 32, 34, 52, 56*].

## IV.  DISCUSSION

The law of defamation protects a basic human interest:  the individual's right to personal security and the uninterrupted enjoyment of his reputation.  In *Rosenblatt v. Baer*, the United States Supreme Court emphasized that:

"'Society has a pervasive and strong interest in preventing and redressing attacks upon reputation.'  The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty".

383 U.S. 75, 92-93 (1966).  Freedom of speech is not absolute. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942).  It does not embrace or excuse defamation. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245-246 (2002) ("freedom of speech has its limits; it does not embrace certain categories of speech, including defamation"). False and defamatory statements are not entitled to ***any*** constitutional protection. *Chaplinsky*, 315 U.S. at 572 ("There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem.  These included the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words – those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.  It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality."); *id. R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 382-383 (1992) ("From 1791 to the present, however, our society, like other free but civilized societies, has permitted restrictions upon the content of speech in a few limited areas … We have recognized that 'the freedom of speech' referred to by the First Amendment does not include a freedom to disregard these traditional limitations.") (citing *Beaucharnais v. Illinois*, 343 U.S. 250, 256 (1952) ("Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal

act would raise no question under that instrument")); *Herbert v. Lando*, 441 U.S. 153, 171 (1979) ("[s]preading false information in and of itself carries no First Amendment credentials."); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349-350 (1974) (there is "no constitutional value in false statements of fact.").

A.   <u>**COUNT I – Defamation**</u>

"Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." *Biro v. Conde Nast*, 883 F.Supp.2d 441, 456 (S.D.N.Y. 2012).  This case involves claims of libel.  Under New York law, to recover on a libel claim, a plaintiff must establish the following elements: "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. New York Times Company*, 940 F.3d 804, 809 (2nd Cir. 2019) (citing *Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 176 (2nd Cir. 2000)); *id. Carr v. Wegman's Food Markets, Inc.*, 182 A.D.3d 667, 122 N.Y.S.2d 391, 394 (2020) (quotation and citations omitted).  A statement is defamatory *per se* if it (a) charges the plaintiff with a serious crime, or (b) tends to injure the plaintiff in his or her trade, business or profession. *Conklin v. Laxen*, 180 A.D.3d 1358, 118 N.Y.S.2d 893, 896 (2020); *Liberman v. Gelstein*, 80 N.Y.2d 429, 435, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992); *see Goulmamine v. CVS Pharmacy, Inc.*, 138 F.Supp.2d , 659 (E.D. Va. 2015) ("With regard to impugning fitness for one's trade, an 'implication ... that the plaintiff is guilty of unethical and unprofessional conduct ... for which conduct the defendant suggests ... that the plaintiff could and should be subjected to disbarment proceedings' is defamatory *per se,* because it "impute[s] conduct tending to injure him in his

profession.'") (citing and quoting *Hatfill v. New York Times Co.*, 416 F.3d 329, 331 (4th Cir. 2005)).

If a statement is defamatory *per se*, injury is assumed. *Celle*, 209 F.3d at 179.

### 1.   *Buhl's Statements Are False*

In New York, falsity is an element of a claim of defamation. *Tannerite Sports, LLC v. NBCUniversal Media, LLC*, 864 F.3d 236, 247 (2nd Cir. 2017).

Kesner's amended complaint assails as false virtually every statement made by Buhl in her blogs and tweets.  Kesner alleges that the SEC's efforts to investigate and charge a broad swath of individuals and companies are not tied to him.  Kesner denies that he played any "role" in any "P&D scheme", or that he was ever part of any pump-and-dump scheme of any kind, or a part of a "crew" or "ring" of "bad actors" involving any investment.  Indeed, he points out that he was not named as a defendant or relief defendant in the original complaint filed by the SEC or in the SEC's amended complaint. Kesner further points out that the SEC reportedly reviewed up to 1.2 million documents, and never brought any charges of any kind against him.  Kesner asserts that Buhl in making the statements implied that she had knowledge of information about the SEC investigation that she did not in fact possess.  Kesner states that he moved to Florida in 2016 and highlights the fact that the "SEC Pump-and-Dump Case" was filed two full years *after* he became a permanent resident of Florida, which negates Buhl's insinuations that Kesner moved to Florida to avoid an "SEC fine" or other liability.  Kesner further denies Buhl's insinuation that he might be a voluntary cooperating witness in a federal investigation of his clients involving public companies and investors.  Kesner denies involvement in *any* illegal acts, including any "back room deals" or "intimidation" of

Biozone.  Kesner flatly denies that he engaged in any misconduct for which he could be disbarred.  Kesner specifically states that there are no public records to support any of Buhl's falsehoods and that Buhl intentionally misquoted sources, including Daniel Fisher, and ignored sources when told her blogs were false.  Kesner emphatically states that Buhl's statements are "without any evidentiary support". [*Am. Compl.,* ¶¶ *2, 4, 6, 9, 13, 14, 15, 20, 22, 24, 25, 26, 32, 33, 34, 46, 47, 48, 49, 50, 51, 52*].

Kesner's amended complaint pleads facts that, if proven, would allow a reasonable person to consider Buhl's statements false and not substantially true. *See, e.g., Goldman v. Reddington*, 417 F.Supp.3d 163, 173 (E.D.N.Y. 2019) (plaintiff adequately pled the falsity of statements accusing him of being a rapist where he "unambiguously disavow[ed] the accusation of rape" and "present[ed] specific facts through [a] ... report to plausibly allege that [the defendant's] claims [were] not true"); *Wolongevicz v. Twon of Manlius*, 2018 W: 3769857, at * 14 (N.D.N.Y. 2018) (denying motion to dismiss because plaintiff adequately pled falsity by alleging that the accusation was "false" and that an investigation conducted into the accusation "found no evidence that the allegations were true"); *Skakel v. Grace*, 5 F.Supp.3d 199, 208-209 (D. Conn. 2014) (denying motion to dismiss where the plaintiff adequately pled falsity based on factual allegations which, if true, established that the statements made by defendants were patently false).

### 2.   *Buhl's Statements Are Actionable*

Kesner can state a claim for defamation against Buhl if Buhl's statements "are potentially defamatory," meaning that they "tend to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of

right-thinking persons, and to deprive him of their friendly intercourse in society." *Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F/Supp.2d 279, 287 (S.D.N.Y. 2006).  In making the determination whether a statement is actionable, the Court must "look to the over-all context in which the assertions were made and determine on that basis 'whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff.'" *Brian v. Richardson*, 87 N.Y.2d 46, 637 N.Y.S.2d 347, 660 N.E.2d 1126, 1131 (1995) (quoting *Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235, 566 N.Y.S.2d 906, 567 N.E.2d 1270, 1281 (1992)).  "Courts are not to render statements actionable by giving them a strained or artificial construction, nor are they to interpret potentially defamatory statements in their mildest and most inoffensive sense to hold them nonlibelous." *Qureshi*, 430 F.Supp.2d at 287 (quotation marks and internal citations omitted).  In addition to express libel, New York recognizes defamation by implication. Statements may be actionable where "the language of the communication as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference." *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 987 N.Y.S.2d 37, 38 (2014); *see Partridge v. State*, 173 A.D.3d 86, 100 N.Y.S.3d 730, 737 (2019) (finding defamation by implication when the placement of a photo by State Police of the claimant imparted the viewer with a reasonable belief that the claimant had committed sex crimes against children and that the State Police endorsed that belief).

"While a pure opinion cannot be the subject of a defamation claim, an opinion that implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, ... is a mixed opinion and is actionable" *Davis v. Boeheim*, 24

N.Y.3d 262, 269, 998 N.Y.S.2d 131, N.E.3d 999 (2014) (internal quotation marks omitted).  "What differentiates an actionable mixed opinion from a privileged, pure opinion is 'the implication that the speaker knows certain facts, unknown to [the] audience, which support [the speaker's] opinion and are detrimental to the person' being discussed". *Id.*  In determining whether a statement is a factual assertion – as opposed to a nonactionable pure opinion – the Court considers three factors: "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact."  Application of these three factors is not rigid and mechanical, and no single factor is dispositive. *Gross v. New York Times Co.*, 82 N.Y.2d 146, 152-154, 603 N.Y.S.2d 813, 623 N.E.2d 1163 (1993); *see Flamm v. American Ass'n of University Women*, 201 F.3d 144, 152 (2nd Cir. 2000) ("we do not think it would be 'impossible to believe' that the description of Flamm as an 'ambulance chaser' implies that he engages in unethical solicitation.  More to the point, it would not be unreasonable to think so, even if 'ambulance chaser' is a figurative way to describe it.  Exaggerated rhetoric may be commonplace in labor disputes, but a reasonable reader would not expect similar hyperbole in a straightforward directory of attorneys and other professionals. Indeed, the opposite is true.  A reasonable reader is more likely to treat as fact the description of Flamm as an 'ambulance chaser' because there is nothing in the otherwise fact-laden directory to suggest otherwise.").  The "mere recitation of prefatory phrases such as 'in my opinion' or 'I think' will not render innocent an otherwise

defamatory statement." *Flamm*, 201 F.3d at 152 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 18-19 (1990)); *see also Masson v. New Yorker Magazine*, 501 U.S. 496, 522 (1991) (holding that report of colleagues' opinion that plaintiff was an "intellectual gigolo" could be defamatory).

Viewed in context and as a whole and considering the three *Gross* factors, the statements in Buhl's blogs and tweets are actionable.  Importantly, in her motion to dismiss Buhl challenges *some but not all* of the statements Kesner alleges are defamatory. The statement that the removal of Kesner's name from his law firm and Honig's resignation from the board of Pershing Gold "could signal an SEC charge or settlement in the near future for both men" is capable of a defamatory meaning.  It implies (a) that Kesner was under investigation by the SEC, (b) that Kesner did something to justify "an SEC charge" or that there was wrongdoing or cause for a "settlement", and (c) that Kesner's partners took his name off the door because an "SEC charge or settlement" was imminent.  Buhl's statements that Kesner was part of a "Team" of "bad actors", or a "pump and dump ring", or that he played a "role" in a "P&D scheme" are all capable of being proven false. *Compare Sunshine Sportswear & Elecs., Inc. v. WSOC Television, Inc.*, 738 F.Supp. 1499, 1506 (D.S.C. 1989) (holding that terms "scam," "rip-off," and "bait and switch," considered in context, "ha[d] ascertainable meaning and c[ould] be identified as either true or false," because they "relay[ed] to the average viewer that the defendants ha[d] access to knowledge confirming that the plaintiffs ha[d] engaged in some course of wrong doing").  Indeed, the SEC concluded that Kesner played no role in the conduct at issue in the SEC Action.  Buhl's statement that it was "unclear if [Kesner] is a confidential informant for the government or if charges will be brought against him

in the future" implies that Buhl has knowledge of underlying facts that would support each proposition, and, for that reason, Buhl was uncertain whether Kesner was a confidential informant or whether charges would be brought against him.  **Buhl had no good faith reason to believe that Kesner was a government informant or that *any* charges would be brought against him by anyone**.  Buhl's blog about the DDOS attack was intended to imply that Kesner had something to do with it, and that he retaliated against Buhl.  Finally, whether Kesner participated in any "illegal back room deals" or "intimidation" of Biozone are clearly actionable. *See, e.g., Harrell v. Colonial Holdings, Inc.*, 923 F.Supp.2d 813, 824 (E.D. Va. 2013) ("Allegations of "illegal" conduct are also clearly actionable, because an accusation that a person's conduct is "illegal" is objectively provable.  Couching such an unequivocal statement as "legal opinion" does not change the analysis.").

Each of the statements published about Kesner is defamatory *per se* because each statement tends to injure Kesner in his trade or business as a securities attorney.

### 3.    *Kesner Alleges The Requisite Level of Fault*

The requisite level of fault varies depending on the status of the parties and the content of the statement.  Where the plaintiff is a private individual, but the content of the statement is "arguably within the sphere of legitimate public concern," the defendant will not be liable unless she "acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *Enigma Software Group USA, LLC v. Bleeping Computer, LLC*, 194 F.Supp.3d 263, 267 (S.D.N.Y. 2016).  If the plaintiff is a private individual and the statement does not concern the public, the gross irresponsibility

standard does not apply, and negligence will suffice. *Greene v. Paramount Pictures Corp.*, 138 F.Supp.3d 226, 236 (E.D.N.Y. 2015).

Kesner is a private individual.  Buhl's false statements do not necessarily involve any matters of "public" concern.  Even assuming, *arguendo*, that the content of Buhl's statements are "within the sphere of legitimate public concern", Kesner adequately alleges that Buhl acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible persons.  In the amended complaint [*Am. Compl., ¶ 62*], Kesner asserts that:

● Buhl abandoned all journalistic standards in blogging and tweeting about Kesner. *See Gilmore v. Jones*, 37 F.Supp.3d 630, 671 (W.D. Va. 2019) (a defendant's failure to observe journalistic standards, although not determinative, is relevant to the actual malice inquiry).  "Journalists" are bound to tell the truth and to minimize harm. *See, e.g.,* https://www.dowjones.com/code-conduct/ ("it is an essential prerequisite for success in the news and information business that our customers believe us to be telling them the truth.  If we are not telling them the truth – or even if they, for any valid reason, believe that we are not – then Dow Jones cannot prosper.  Dow Jones will suffer, for example, if our customers cannot assume that … Our facts are accurate and fairly presented"); https://www.spj.org/ethicscode.asp ("Ethical journalism treats sources, subjects, colleagues and members of the public as human beings deserving of respect."). Kesner alleges that Buhl betrayed every standard of ethical journalism.  In her blogs, Buhl expressly stated that Kesner was part of the "Team Honig pump and dump ring"; that Kesner was part of a "crew" of "bad actors"; that Kesner had engaged in "egregious" "illegal back room deals" and "intimidation" of Biozone; that Kesner played a "role in

[the] Honig P&D scheme"; and that he engaged in "securities fraud" and aided an accused stock "fraudster". Each of these statements is false – so false that the SEC never once named Kesner as a defendant or relief defendant in any action or even used his name in a pleading. Buhl's statements also falsely imply or insinuate that Kesner was the subject the SEC action, that he moved to Florida to avoid an "SEC charge" or an "SEC fine",[5] that he was a confidential informant for the government, and that there was a possibility that "charges" might be brought against Kesner in the future.

●      Buhl targeted Kesner. She chose to manufacture and publish false and scandalous statements and use insulting words that were unnecessarily strong and that constitute violent, abusive, hateful, sensational language and *ad hominem* attacks, disproportionate to any occasion. The words chosen by Buhl evince her ill-will, spite and actual malice. *Celle*, 209 F.3d at 186 ("Plaintiff introduced sufficient circumstantial evidence to establish clearly and convincingly that defendant Pelayo entertained serious doubts about the truth of the headline 'US judge finds Celle 'negligent.'' This conclusion is based in part on evidence indicating ill will and personal animosity between Celle and Pelayo at the time of publication"); *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 315 fn 19 (5th Cir. 1995) ("[E]vidence of ill will can often bolster an inference of actual malice."); *id. AdvanFort Co. v. Maritime Executive, LLC*, 2015 WL 4603090, at * 8 (E.D. Va. 2015) ("If, in fact, TME knew of the bad blood between Plaintiffs and Defendant Cartner, it would have indeed had obvious reason to doubt Cartner's veracity

---

[5]      In her May 14, 2019 blog, Buhl represented that Kesner "recently moved his main residence to South Florida". In truth, Kesner moved to Florida in 2016 – **two (2) years before the SEC Action was filed**. [*See Am. Compl., ¶ 9*].

and the accuracy of his statements given the blatantly hostile and sarcastic tone of the Article.").

●      Buhl manufactured false statements as part of a preconceived story that Kesner was part of the "Team Honig pump and dump ring". *Eramo v. Rolling Stone, LLC*, 2016 WL 5234688, at * 5 (W.D. Va. 2016) ("evidence that a defendant conceived a story line in advance of an investigation and then consciously set out to make the evidence conform to the preconceived story is evidence of actual malice, and may often prove to be quite powerful evidence.") (quoting *Harris v. City of Seattle*, 152 Fed.Appx. 565, 568 (9th Cir. 2005)).

●      Buhl made up facts out of whole cloth.  She knew that the statements in her blog were false. *See, e.g., ExpertConnect, LLC v. Fowler*, 2020 WL 3961004, at 3 (S.D.N.Y. 2020) (plaintiff alleged that the defendants "'engaged in a concerted effort to deliberately disparage the business reputations of Fowler, Parmar, and Strafluence with false statements' that they had committed a serious crime and were under investigation. These statements were made 'with full knowledge of their falsity' because '[t]here has never been any criminal action commenced against Fowler or Parmar, no investigation of any sort and, to be sure, no allegations of criminal conduct.'"); *Watson v. NY Doe 1*, 2020 WL 635843, at * 7 (S.D.N.Y. 2020) ("This is a case where the alleged false statements were allegedly based on the direct knowledge of the alleged defamer that the plaintiff alleges is false.  A fair inference from the Complaint is that NY Doe 2 knew that the plaintiff did not rape her but falsely made that accusation.  Those circumstances are sufficient to infer actual or constitutional malice on the part of NY Doe 2 because she is alleged to have firsthand knowledge of whether the plaintiff did or did not rape her.");

*Minett v. Snowden*, 2018 WL 2929339, at * 9-10 (Tex. App. 2018) (plaintiff alleged actual malice, where defendant made facts up out of whole cloth); *see  St. Anant v. Thompson*, 390 U.S. 727 (1968) ("Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call.  Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation"); *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 153 (1967) (deliberate falsification constitutes actual malice); *Hudnall v. Sellner*, 800 F.2d 377, 382 (4th Cir. 1986) (evidence supported finding of actual malice where the legitimate inference drawn from testimony was that defendant "knowingly concocted the accusations out of whole cloth"), *cert. denied,* 479 U.S. 1069 (1987).[6]

●      Buhl failed to investigate known and obvious facts, such as why the SEC never named Kesner in any complaint. *See Eramo*, 2016 WL 5234688, at * 6 ("a reasonable jury could conclude that Erdely should have investigated further, and that her failure to do so could imply that Erdely acted with actual malice."); *A.B.C. Needlecraft Co. v. Dun & Bradstreet, Inc.*, 245 F.2d 775, 777 (2nd Cir. 1957) (the failure to verify, when verification would have been a "simple matter," rises to the level of "wanton and reckless disregard for the rights of another").

---

[6]      In addition to alleging that Buhl fabricated or made up facts, Kesner specifically alleges the motive:  to destroy Kesner's reputation and to destroy the companies in which his clients invested. *See Bose Corp. v. Consumers Union of U.S., Inc.*, 692 F.2d 189, 196 (1st Cir. 1982) (listing "motive" as one of the facts on which a complaint "should provide evidence" to allow an inference of actual malice).

●    Buhl excessively republished her false statements *and* the Barron's article out of a desire to injure Kesner. *Goldwater v. Ginzburg*, 414 F.2d 324, 337 (2nd Cir. 1969, *cert. denied*, 396 U.S. 1049 (1970) (stating that repetition is one factor that may be probative of actual malice); *Enigma Software Group*, 194 F.Supp.3d at 287 ("A speaker who repeats another's defamatory statement is not made immune from liability for defamation merely because another person previously made the same demeaning claim.") (citing *Flamm*, 201 F.3d at 152 ("[T]he fact that a particular accusation originated with a different source does not automatically furnish a license for others to repeat or publish it without regard to its accuracy or defamatory character.") (quotation omitted)); *Cianci v. New Times Publ'g Co.*, 639 F.2d 54, 60-61 (2nd Cir. 1980) (discussing the "black-letter rule that one who republishes a libel is subject to liability just as if he had published it originally, even though he attributes the libelous statement to the original publisher, and even though he expressly disavows the truth of the statement.") (quotation marks and citation omitted).

### 4.    *Headlines Are Not Necessarily Protected*

Most readers make up their minds and stop reading after the scandalous headline.

In New York, defamatory headlines are actionable though the matter following is not, unless they "fairly index the substance of the matter to which they refer, and ... unless they are a fair index of the matter contained in a truthful report". *Schermerhorn v. Rosenberg*, 426 N.Y.S.2d 274, 286-287 (A.D. 1980) (quoting *Lawyers' Co-Operative Pub. Co. v. W. Pub. Co.*, 352 N.Y.S. 1120, 1123 (A.D. 1898)) (internal citation marks omitted).

Here, the headline – "**The Lawyer at the Center of SEC Pump-and-Dump Case**" – fails to track the substance of the article about the SEC Action because, in truth, Kesner is not mentioned anywhere in the SEC Action. *Compare Butowsky v. Folkenflik*, 2019 WL 2518833, at * 37 (E.D. Tex. 2019) (the defendant published an article entitled "**The Man Behind The Scenes In Fox News' Discredited Seth Rich Story**". The plaintiff asserted that the words "Man Behind The Scenes" stated or implied that the plaintiff orchestrated the story. The District Court found that the headline was reasonably capable of a defamatory meaning). Thus, like the headlines at issue in *Butowsky* and *Schermerhorn*, the headline of the Barron's article is itself actionable. *See Schermerhorn* at 279-280 (finding that a defamation claim regarding the headline, "Schermerhorn Says NDDC Can Do Without Blacks," was actionable because the substance of Senator Schermerhorn's statement, as accurately reflected in the article that followed the headline, was that he hoped that those selected to the NDDC's board of directors would be the best qualified, regardless of race).

Similarly, the headlines of several of Buhl's blogs are clearly actionable. For instance, the headlines "**New Emails show attorney Harvey Kesner aided Defrancesco in Questionable Cannabis stock Deal**" and "**SEC looking at New Names in Barry Honig Pump and Dump Scheme**", which expressly or impliedly accuse Kesner of wrongdoing, do not fairly index the content that follows. Indeed, in her June 7, 2019 blog, Buhl invited readers to click on a red hyperlink for the details of how the "alleged securities fraud was run". The link opens another article whose headline accuses Kesner of "aiding" an accused "stock fraudster". The clear import of these headlines is that Kesner aided and abetted securities fraud.

In addition to the contents of her blogs, Buhl is liable for the defamatory headlines.

**5.**     ***Fair And True Report Privilege***

Federal courts sitting in diversity apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Under New York choice of law rules, the first step is to determine whether there is an actual conflict between the laws of the jurisdictions involved.   The Court need not "embark on a choice-of-law analysis in the absence of an 'actual conflict' between the applicable rules of two relevant jurisdictions." *Kinsey v. The New York Times Company*, 2020 WL 1435141, at * 4 (S.D.N.Y. 2020) (citations and quotations omitted).

Here, there is a true conflict between New York and Florida's fair report privileges.  While Florida follows the common law privilege of the Restatement (Second) of Torts section 611, New York follows a codified fair report privilege. *Compare Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 502–03 (Fla. 3d DCA 1993), *with* N.Y. Civ. Rights Law § 74.  Florida's privilege is qualified, whereas New York's privilege is absolute. *Compare Woodard*, 616 So. 2d at 502, *with Cholowsky v. Civiletti*, 887 N.Y.S.2d 592, 594 (App. Div. 2nd Dep't 2009).

Because there is a true conflict, the Court must conduct a choice-of-law analysis on Buhl's fair report privilege defense.

**a.**     ***Florida Law Governs The Fair Report Privilege***

In a defamation case like this, New York applies the "most significant relationship" test of the Restatement (Second) of Conflict of Laws section 145. *Kinsey*, 2020 WL 1435141 at * 4.  In cases where a defamatory statement is published nationally,

"the state of most significant relationship is usually the state where the plaintiff was domiciled at the time" the defamatory statement was published. *Id.* (quoting *Davis v. Costa-Gavras*, 580 F.Supp. 1082, 1091 (S.D.N.Y. 1984) (quoting Restatement (Second) of Conflict of Laws § 150(2) (1977)).  "This presumptive choice of law does not hold true, however, if 'with respect to the particular issue, some other state has a more significant relationship to the issue or the parties.'" *Id.* (quoting Restatement (Second) of Conflict of Laws § 150 cmt. (e) (1977)); *see also La Luna Enterprises, Inc. v. CBS Corp.*, 74 F.Supp.2d 384, 389 (S.D.N.Y. 1999) ("Although the preference for the plaintiff's domicile is not conclusive, the significant contacts [in a defamation case] are, almost exclusively, the parties' domiciles and the locus of the tort." (citation omitted).  In deciding the state of the most significant relationship, Courts consider "where the plaintiff suffered the greatest injury, where the statements emanated from and were broadcast, where the activities to which the allegedly defamatory statements refer took place and the policy interests of the states whose laws might apply." *Kinsey*, 2020 WL 1435141 at * 4 (quotation omitted).

First, Kesner is a citizen of Florida.  He was injured in Florida, where the blogs were read by Florida residents, where Kesner's Florida clients terminated him after reading the blogs, where Kesner's reputation suffered egregious harm in the eyes of the readers such that he lost business opportunities in Florida. [*Am. Compl., ¶¶ 1, 2, 7, 9, 21, 38, 41, 43, 45*].  In *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770 (1984), a New York resident sued Hustler magazine (an Ohio corporation) in New Hampshire, claiming that she had been libeled in five issues of the magazine, which was distributed throughout the country, including in New Hampshire, where Hustler sold 10,000 to 15,000 copies per

month.   Concluding that specific jurisdiction was present, the Supreme Court of the

United States found that there was a connection between the circulation of the magazine

in New Hampshire and damage allegedly caused within the State.   The Court correctly

held that "[f]alse statements of fact harm both the subject of the falsehood *and* the readers

of the statement." *Id*. at 776 (emphasis in original).   In *Keeton*, the Supreme Court clearly

explained:

> "The tort of libel is generally held to occur wherever the offending material is
> circulated. Restatement (Second) of Torts § 577A, Comment a (1977).   The
> reputation of the libel victim may suffer harm even in a state in which he has
> hitherto been anonymous.   The communication of the libel may create a negative
> reputation among the residents of a jurisdiction where the plaintiff's previous
> reputation was, however small, at least unblemished."

*Id.* at 777.

Second, this is a multi-state defamation case.   The place where the defamatory

statement emanated is of "less significance" in cases of multi-state defamation.

Restatement § 145 cmt. e.   In an analogous situation, this Court ruled that in a multi-state

internet defamation case, the law of the plaintiff's domicile should presumptively control,

as that is where "the plaintiff suffered the greatest injury." *Hatfill v. Foster*, 415

F.Supp.2d 353, 364 (S.D.N.Y. 2006); *see also Gilmore v. Jones*, 370 F. Supp. 3d 630,

645 (W.D. Va. 2019).

Third, Buhl's blogs expressly refer to actions that took place in Florida, including

Kesner relocation to the "homestead state" to avoid an "SEC fine".   The members of the

putative "Team", "crew" and "pump and dump ring" all live in Florida, which will be the

locus of most of the evidence in this case.

Finally, Florida has a significant interest in protecting its citizens from defamation

and redressing injuries that occur within the State. *Keeton,* 465 U.S. at 776 ("it is beyond

dispute that New Hampshire has a significant interest in redressing injuries that actually occur within the State.").  In sum, the factors weigh heavily in favor of applying Florida law to determine whether Kesner's defamation claim are subject to the fair report privilege.

### b.    *The Buhl Blogs Are Not Fair, True Or Impartial*

The "fair report privilege" is news media's qualified privilege "to report accurately on information received from government officials." *Rasmussen v. Collier Cty. Publ'g Co.*, 946 So.2d 567, 570-571 (Fla 2nd DCA 2006).  Florida courts have borrowed from the Restatement (Second) of Torts § 611 in describing the privilege. *Woodard v. Sunbeam Television Corp.*, 616 So.2d 501, 502 (Fla 3rd DCA 1993) (quoting Restatement (Second) of Torts § 611 cmt. b (1977) ("If the report of a public official proceeding is accurate or a fair abridgement, an action cannot constitutionally be maintained, either for defamation or for invasion of the right of privacy.").

Florida's fair report privilege requires that a report be "accurate and complete or a fair abridgment" of the underlying information.  Whether a report is "fair and true" focuses on whether the report "attributes to Plaintiff[] misconduct beyond that alleged" in the court document. *Gubarev v. BuzzFeed, Inc.*, 340 F.Supp.3d 1304, 1318 (S.D. Fla. 2019).  Discrepancies that would have "a different effect on the mind of the [reader]" and that "affect the gist of the story" prevent the fair report privilege from operating. *Woodard*, 616 S.2d at 503; *compare Dorr v. U.S.*, 195 U.S. 138, 152-153 (1904) ("The publisher must add nothing of his own.  He must not state his opinion of the conduct of the parties, or impute motives therefor; he must not insinuate that a particular witness committed perjury.  That is not a report of what occurred; it is simply his comment on

what occurred, and to this no privilege attaches.  Often such comments may be justified on another ground,—that they are fair and bona fide criticism on a matter of public interest, and are therefore not libelous.  But such observations, to which quite different considerations apply, should not be mixed up with the history of the case.  Lord Campbell said: 'If any comments are made, they should not be made as part of the report. The report should be confined to what takes place in court; and the two things—report and comment—should be kept separate.'  And all sensational headings to reports should be avoided.'") (quoting Newall on Defamation, Libel and Slander, chap. 19, § 153)).

Regardless whether Florida or New York law applies, many of Buhl's statements are not reports on a judicial or other official proceeding and, therefore, do not implicate the fair and true report privilege.  Moreover, as Kesner clearly and repeatedly alleges in the amended complaint, Buhl's blogs are not a *fair* or *substantially accurate* portrayal of Kesner's role and/or involvement in any alleged "pump-and-dump" scheme.  In truth, Kesner had no role.  Kesner was not even mentioned in the original complaint in the SEC Action, or even a year later when the SEC amended its complaint after a thorough review of all the facts.  At the very least, the parties dispute whether the blogs are "fair" and/or "accurate".  These disputes cannot be resolved on a motion to dismiss.

## B.   <u>COUNT II – Commercial Disparagement</u>[7]

Under New York law, "defamation and disparagement in the commercial context" are two distinct, albeit related causes of action. *Ruder & Finn, Inc. v. Seaboard Sur. Co.*, 422 N.E.2d 518, 522 (N.Y. 1981); *see also Fashion Boutique of Short Hills, Inc. v. Fendi*

---

[7]    In his Memorandum in Opposition to Barron's motion to dismiss, Kesner addresses the reasons why Counts II, III, IV and V are not barred by Florida law.  This Memorandum will address New York law as it may apply to Kesner's claims.

*USA, Inc.*, 314 F.3d 48, 59 (2ⁿᵈ Cir 2002).   Although "the gravamen of both are falsehoods published to third parties," statements constitute commercial defamation only when they "impugn[] the basic integrity or creditworthiness of a business." *Ruder & Finn*, 422 N.E.2d at 522.

Here, Kesner pleads both that Barrons and Buhl published falsehoods to third parties [*Am. Compl.*, ¶¶ *8, 23, 58*] and that the false statements impugned his integrity and denigrated the quality of his services as a securities lawyer.   Kesner also alleges malice and that he suffered special damages. [*See, e.g., Am Compl.*, ¶¶ *7, 70*].

**C.      COUNT III – Deceptive and Unfair Trade Practices**

Under § 349 of the New York General Business Law ("NYGBL"), "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are ... unlawful." NYGBL § 349(a).   To state a claim under § 349(a), "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2ⁿᵈ Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012)).

Kesner has plausibly stated a claim of deceptive and unfair trade practices against blogger Buhl.

**D.      COUNT IV – Tortious Interference**

"Under New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the

third[] party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *P&G Auditors and Consultants*, 2019 WL 4805862 at * 7 (quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2nd Cir. 2006)).

Kesner alleges each of the elements of a cause of action for tortious interference with contract and business expectations. The amended complaint expressly states that Kesner had valid and enforceable contracts and existing business expectancies in his relationships with his law firm and clients, and that Kesner had a reasonable expectation of earning substantial income from those business relationships. Kesner further states that both Barrons and Buhl knew about his relationship with his law firm and his clients, and knowingly published false statements that caused Plaintiff's business relationship to end. Knowingly false disparagement that impugns the basic integrity and competence of a person is more than sufficient, under New York law, to show the requisite culpability to sustain a tortious interference claim. *See, e.g., Amaranth LLC v. J.P. Morgan Chase & Co.*, 888 N.T.S.2d 489, 495 (N.Y. A.D. 2009); *John Langenbacher Co. v. Tolksdorf*, 605 N.Y.S.2d 34, 35 (N.Y. A.D. 1993). Accordingly, Kesner has adequately stated a claim for tortious interference.

E.    **COUNT V – Common Law Conspiracy**

Although New York does not recognize civil conspiracy to commit a tort as an independent cause of action, "a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort and establish that those actions were part of a common scheme." *Environmental Services, Inc. v. Recycle Green Services, Inc.*, 7 F.Supp.3d 260, 277 (E.D.N.Y. 2014) (quoting

*Dickinson v. Igoni*, 76 A.D.3d 943, 945, 908 N.Y.S.2d 85 (2nd Dept. 2010) and *Litras v. Litras*, 254 A.D.2d 395, 396, 681 N.Y.S.2d 545 (2nd Dep't 1998)).

Viewing the amended complaint in the light most favorable to Kesner, there are sufficient facts alleged from which it may be inferred that Barrons and Buhl knowingly participated in a fraudulent scheme to defame Kesner.

## CONCLUSION AND REQUEST FOR RELIEF

For the reasons stated above, Plaintiff respectfully requests the Court to deny Defendant Buhl's motion to dismiss.

DATED:          August 17, 2020

Respectfully Submitted,

HARVEY J. KESNER

By:    */s/ Steven S. Biss*
          Steven S. Biss (VSB # 32972)
          300 West Main Street, Suite 102
          Charlottesville, Virginia 22903
          Telephone:      (804) 501-8272
          Facsimile:      (202) 318-4098
          Email:          stevenbiss@earthlink.net
          (*Admitted Pro Hac Vice*)

          Robert C. Buschel, Esq.
          Florida Bar No. 0063436
          BUSCHEL GIBBONS, P.A.
          One Financial Plaza
          100 S.E. Third Avenue, Suite 1300
          Fort Lauderdale, Florida 33394
          Tele: (954) 530-5301
          Buschel@BGlaw-pa.com
          (*Admitted Pro Hac Vice*)

          *Counsel for the Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 17, 2020 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendants and all interested parties receiving notices via CM/ECF.

By: <u>*/s/ Steven S. Biss*</u>

Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone:     (804) 501-8272
Facsimile:      (202) 318-4098
Email:            stevenbiss@earthlink.net
(*Admitted Pro Hac Vice*)

Robert C. Buschel, Esq.
Florida Bar No. 0063436
BUSCHEL GIBBONS, P.A.
One Financial Plaza
100 S.E. Third Avenue, Suite 1300
Fort Lauderdale, Florida 33394
Tele: (954) 530-5301
Buschel@BGlaw-pa.com
(*Admitted Pro Hac Vice*)

*Counsel for the Plaintiff*