UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARVEY J. KESNER,<br><br>*Plaintiff*,<br><br>vs.<br><br>DOW JONES & COMPANY, INC. d/b/a BARRON'S; WILLIAM "BILL" ALPERT; and TERI BUHL,<br><br>*Defendants*. | No. 20-cv-03454 (PAE) |

## TERI BUHL'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM AGAINST PLAINTIFF

Defendant Teri Buhl ("Defendant"), by and through her undersigned counsel, hereby Answers and provides Affirmative Defenses to the Amended Complaint of Plaintiff Harvey J. Kesner ("Plaintiff") as follows, in accordance with the headings and numbering of paragraphs utilized by Plaintiff in the Amended Complaint, and assert the following Counterclaim against Plaintiff.

## ANSWER

Defendant denies each and every allegation, and each and every characterization, contained in the Amended Complaint, except as specifically admitted or explained herein. Defendant further denies each and every conclusion of law asserted by Plaintiff in the Amended Complaint. To the extent that headings or any other non-numbered statements in the Amended Complaint contain any identifiable factual allegations, Defendant denies each and every such allegation. To the extent that any pleading in the Amended Complaint is not responded to

1

herein, such pleading is mooted by Court order and/or so vague or ambiguous that Defendant cannot reasonably prepare a response.

## I. INTRODUCTION

1. Denied. Furthermore, no answer required as to conclusions of law (As used herein, the phrase "no answer required" shall mean that the allegation or paragraph contains conclusions of law and/or prayers for relief and not averments of fact as to which an admission or denial is required. To the extent that such allegation or paragraph shall be deemed to allege actionable behavior or wrongdoing by or against Defendant, it is denied.)

2. Denied.

3. Denied.

4. Denied. Without knowledge as to the first sentence. (As used herein, the phrase "without knowledge" shall mean that Defendant is without sufficient knowledge or information necessary to form a belief as to the truth of the allegation, and Defendant therefore denies same.)

5. Denied. Without knowledge as to Philip Frost.

6. Denied.

7. Denied. Without knowledge as to Plaintiff's characterization of his alleged relationships.

## II. THE BARRON'S ARTICLE AND THE BUHL BLOGS

8. Denied as to Plaintiff's characterization of Barron's October 4, 2018 article and headline. Furthermore, no answer required as to conclusions of law.

9. Denied. Defendant specifically admits to publishing the two articles cited in Paragraph 9, the August 2019 Article, *available at* https://www.teribuhl.com/2018/08/29/kesners-out-why-is-

barry-honigs-securities-lawyer-retiring, and the May 2019 Article, *available at* https://www.teribuhl.com/2019/05/14/judge-says-honigs-attorney-harvey-kesner-can-be-sued-for-fraud-and-malpractice-mbv. Furthermore, both these articles were determined to not be defamatory as a matter of law pursuant to the Court's Opinion and Order, Dkt. 114, and so no answer is required.

10. Denied. Furthermore, the August 2018 Article cited in Paragraph 10 was determined to not be defamatory as a matter of law pursuant to the Court's Opinion and Order, Dkt. 114, and so no answer is required.

11. Denied, except that Defendant specifically admits to publishing the May 2019 Article, *available at* https://www.teribuhl.com/2019/05/14/judge-says-honigs-attorney-harvey-kesner-can-be-sued-for-fraud-and-malpractice-mbvx/. Furthermore, the May 2019 Article cited in Paragraph 11 was determined to not be defamatory as a matter of law pursuant to the Court's Opinion and Order, Dkt. 114, and so no answer is required.

12. Denied, except Defendant specifically admits that she wrote the quotation in the last sentence. Such statement was determined to not be defamatory as a matter of law pursuant to the Court's Opinion and Order, Dkt. 114, and so no answer is required.

13. Denied. Furthermore, Plaintiff's allegations in Paragraph 13 were determined to not be defamatory as a matter of law pursuant to the Court's Opinion and Order, Dkt. 114, and so no answer is required.

14. Denied, except that Defendant specifically admits to publishing the August 2019 Article, *available at* https://www.teribuhl.com/2019/08/20/sec-looking-at-new-names-in-barry-honig-pump-and-dump-scheme-mgt-mbvx. Furthermore, the August 2019 Article cited in

Paragraph 14 was determined to not be defamatory as a matter of law pursuant to the Court's Opinion and Order, Dkt. 114, and so no answer is required.

15. Denied.

16. Denied.

17. Denied.

18. Defendant specifically admits that she was named "25 Most Dangerous People in Financial Media" but denies Plaintiff's implication that the word "Dangerous" in the headline of the article presents Defendant in a negative light. Without knowledge as to Bill Alpert.

19. Denied. Furthermore, no answer required as to conclusions of law.

### III. THE DEFAMATORY GIST

20. Denied.

21. Denied. Furthermore, no answer required as to conclusions of law.

22. Denied.

23. Without knowledge.

24. Denied.  Many of Plaintiff's allegations in Paragraph 24 were determined to not be defamatory as a matter of law pursuant to the Court's Opinion and Order, Dkt. 114, and so no response is required.  Of those allegations that remain, specifically in regard to the October 31, 2018 Article and the March 27, 2019 Tweet, Defendant denies each and every factual allegation in relation thereto.

25. Denied. Defendant specifically admits she published an article on June 7, 2019, titled "New Emails show attorney Harvey Kesner aided Defrancesco in Questionable Cannabis stock Deal."  Furthermore, many of Plaintiff's allegations in Paragraph 25 were determined to not

be defamatory as a matter of law pursuant to the Court's Opinion and Order, Dkt. 114, and so no answer is required.

26. Denied.

27. Denied.

28. Denied, except that Defendant specifically admits that she solicits donations on her website, teribuhl.com.

29. Denied.

30. Denied, except that Defendant specifically admits that she solicits "tips" on her website, teribuhl.com.

31. Denied.

32. Denied.

33. Denied, except that Buhl specifically admits she filed a sworn statement on August 24, 2019 but denies each and every allegation set forth in Paragraph 33 that alleges these sworn statements are false.

34. Denied.

35. Denied.

36. Denied. Furthermore, no answer required as to conclusions of law.

## IV. PARTIES

37. Without knowledge.

38. Without knowledge as to first sentence of Paragraph 38. Denied as to the remaining allegations.

39. Without knowledge.

40. Without knowledge.

41. Without knowledge.

42. Denied. Defendant specifically admits she is a citizen of New York.

## V. JURISDICTION AND VENUE

43. Denied to the extent that the United States District Court for the Southern District of Florida has subject matter jurisdiction. Pursuant to court order, this action was transferred from the Southern District of Florida to the Southern District of New York, Dkt. 76.

44. Denied to the extent that Defendant is subject to personal jurisdiction in Florida and aver that no answer required as to conclusions of law. Pursuant to court order, this action was transferred from the Southern District of Florida to the Southern District of New York, Dkt. 76.

45. Denied to the extent that venue is proper in the Southern District of Florida and aver that no answer required as to conclusions of law. Pursuant to court order, this action was transferred from the Southern District of Florida to the Southern District of New York, Dkt. 76.

## VI. STATEMENT OF ADDITIONAL MATERIAL FACTS

46. Admitted but without knowledge as to where the defendants in the SEC Action reside.

47. Admitted but without knowledge as to the specific number of records reviewed.

48. Without knowledge.

49. Without knowledge.

50. Without knowledge.

51. Denied.

52. Denied, except Defendant specifically admits to reviewing the SEC complaint.

53. No answer required.

54. No answer required.

55. Denied, except Defendant specifically admits to receiving a notice from Plaintiff's counsel on May 13, 2019.

56. Denied, except Defendant specifically admits that she refused Plaintiff's demands to make or issue any kind of correction or retraction.

## COUNT I - DEFAMATION

57. Defendant incorporates its responses to Paragraphs 1 through 56 as if fully set forth herein.

58. Denied. Furthermore, no answer required as to conclusions of law.

59. Denied. Furthermore, no answer required as to conclusions of law.

60. Denied. Furthermore, no answer required as to conclusions of law.

61. Denied. Furthermore, no answer required as to conclusions of law.

62. Denied. Furthermore, no answer required as to conclusions of law.

    a. Denied.
    b. Denied.
    c. Denied.
    d. Denied.
    e. Denied.
    f. Denied.
    g. Denied.
    h. Denied.
    i. Denied.

63. Denied.

64. Denied. Furthermore, no answer required as to conclusions of law.

## COUNT II – COMMERCIAL DISPARAGEMENT

65. Plaintiff's second cause of action has been dismissed pursuant to Opinion and Order, Dkt. 114, and so no answer is required to Paragraphs 65-70.

## COUNT III – DECEPTIVE AND UNFAIR TRADE PRACTICES

66. Plaintiff's third cause of action has been dismissed pursuant to Opinion and Order, Dkt. 114, and so no answer is required to Paragraphs 71-75.

## COUNT IV– TORTIOUS INTERFERENCE

67. Plaintiff's fourth cause of action has been dismissed pursuant to Opinion and Order, Dkt. 114, and so no answer is required to Paragraphs 76-80.

## COUNT V – COMMON LAW CONSPIRACY

68. Plaintiff's fifth cause of action has been dismissed pursuant to Opinion and Order, Dkt. 114, and so no answer is required to Paragraphs 81-85.

## AFFIRMATIVE DEFENSES

**First Affirmative Defense**
(Failure to State a Claim)

1. Plaintiff has failed to state a claim upon which relief may be granted.

**Second Affirmative Defense**
(Truth)

2. Defendant affirmatively asserts that all statements and comments by Defendant were true and thus cannot be the basis for a defamation action.

## Third Affirmative Defense
(Lack of Injury Caused by Defendant)

3. No act or omission on part of Defendant either caused or contributed to whatever injury (if any) Plaintiff may have suffered.

## Fourth Affirmative Defense
(Substantial Truth)

4. Plaintiff's claims are barred under the substantial truth doctrine.

## Fifth Affirmative Defense
(No Provable False Assertions of Fact)

5. The Defendant's statements are not properly subject to a defamation suit because they contained no provably false assertions of fact.

## Sixth Affirmative Defense
(Defendant's Good Faith and Due Care)

6. Defendant acted at all relevant times in good faith, with due care, and without negligence towards Plaintiff.

## Seventh Affirmative Defense
(Without Malice)

7. Defendant acted at all relevant times without actual malice towards Plaintiff.

## Eighth Affirmative Defense
(Fair Report Privilege)

8. Defendant's statements are absolutely privileged under the fair report privilege pursuant to NY Civil Rights Law § 74.

## Ninth Affirmative Defense
(Fair Index Doctrine)

9. Defendant's statements are protected by the fair index doctrine.

### Tenth Affirmative Defense
(Common Interest Privilege)

10. Defendant's statements discussed a matter of public concern, and therefore are protected by the common interest privilege.  Plaintiff cannot recover for defamation without proving actual malice.

### Eleventh Affirmative Defense
(SLAPP Suit Violation)

11. The action brought by Plaintiff is a SLAPP suit prohibited by New York law.  Plaintiff cannot recover for defamation without proving actual malice.

### Twelfth Affirmative Defense
(Equitable Defenses)

12. Plaintiff's claims are barred, in whole or in part, by the doctrines of laches, estoppel, unclean hands, and/or other equitable defenses.

### Thirteenth Affirmative Defense
(Failure to Mitigate Damages)

13. Plaintiff has failed to properly mitigate his damages.

**WHEREFORE**, Teri Buhl requests that Count I of the Amended Complaint be dismissed and that judgment be entered in her favor, including an award of her costs, attorneys' fees and expenses of this action and such other relief as this Court may deem just and proper.

## COUNTERCLAIM

Teri Buhl ("Defendant," or "Counterclaimant"), by and through her undersigned attorney, hereby asserts this Counterclaim, pursuant to Federal Rules of Civil Procedure 13, against Harvey Kesner ("Plaintiff" or "Counterdefendant"), and alleges as follows:

## PARTIES

1. Teri Buhl is an investigative journalist, a longstanding member of the Society of Professional Journalists, and a resident of the State of New York.

2. Harvey Kesner is an attorney listed as having a license to practice law in the State of New York and is a resident of the State of Florida.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between Harvey Kesner and Teri Buhl and the amount in controversy is greater than $75,000.

4. The Court has personal jurisdiction over the Plaintiff because Plaintiff has already submitted to jurisdiction by initiating and continuing this action in New York.

5. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in New York City.

## CERTAIN FACTUAL BACKGROUND

6. The Plaintiff brought his lawsuit in a calculated, brazen, and unlawful attempt to chill Ms. Buhl's reporting. The facts relating to this Counterclaim all point to one conclusion: Ms.

11

Buhl's reporting was starting to reveal Plaintiff's involvements in several questionable transactions, and the Plaintiff did not want Ms. Buhl to continue with her reporting. Plaintiff's initiation, and continuation of this action, infringes upon Ms. Buhl's First Amendment rights, and, more importantly for purposes of this Counterclaim, violate New York law which prohibits this kind of retaliatory behavior.

7. Despite Plaintiff's baseless accusations that Ms. Buhl is not a journalist, Ms. Buhl is in fact a longtime investigative journalist reporting primarily on the financial industry.[1]

8. Ms. Buhl's work has been published in numerous publications, including the *New York Post*, *New York Magazine*, *Forbes Magazine*, *The Atlantic*, *Fortune*, *New York Observer*, *Business Insider*, Hearst Newspapers, and *Growth Capitalist*. On the basis of her reporting for *The Atlantic* on Bear Sterns' role in the subprime mortgage crisis, Ms. Buhl was featured in the *Frontline* documentary film *The Untouchables*.

9. As is common practice among journalists, Ms. Buhl currently works as a freelance reporter for *Cannabis Law Report*, but also, some of Ms. Buhl's reporting is published on her online news publication, *www.teribuhl.com* (the "Website").

10. Ms. Buhl is dedicated to exposing wrongdoing in the financial industry and she has reported on misconduct that has led to over half a dozen criminal charges or SEC/FINRA enforcement actions.

11. Her uncovering of misdeeds by some of the titans of Wall Street led *Huffington Post* to name her as one of the "25 Most Dangerous People in Financial Media (Dangerous in a

---

[1] New York Supreme Court Judge W. Franc Perry ruled the reporting by Ms. Buhl on *teribuhl.com* was that of a professional journalist. *Anonymous v. Anonymous*, No. 655887/2018, p. 2 (N.Y. Sup. Ct. 03/06/2019).

good way …).” These 25 people were journalists who were not afraid to hold accountable bad actors in the finance industry.

12. Plaintiff, in an ironic misuse of this *Huffington Post* article, purposely misstates this article in his Amended Complaint by construing the word "Dangerous" in a derogatory manner, when, in fact, this article was complimentary of Ms. Buhl's efforts in trying to root out financial and/or securities-related wrongdoing.

13. Further, the Amended Complaint contains derogatory, false, and completely unfounded and fabricated allegations against Ms. Buhl. The Amended Complaint, among other things, falsely states that Ms. Buhl:

   a. is a "paid stock promoter." ¶ 16.

   b. has "turned Barron's . . . into a tool for illegal short selling. Buhl and Alpert masquerade as reporters, while working on behalf of short sellers in the dark underbelly of finance." ¶ 16.

   c. "profit[s] by selling stock "short" or at deep discount following a rapid 'stock drop' - a drop in prices created by their disinformation campaign." ¶ 16.

   d. commits "illegal 'short and distort' attack[s]." ¶ 16.

   e. "fall[ing] in league with class action plaintiffs who bring 'stock-drop' suits that further depress stock prices." ¶ 17.

   f. has committed securities fraud, and other crimes, by "publishing false and misleading information in order to profit from the sale of securities." ¶ 19

14. The Amended Complaint is defamatory against Ms. Buhl but for any possible judicial or litigation privilege.

15. The Plaintiff's only intention for bringing this case is to bully, harass, and ultimately censor Ms. Buhl by burdening her with the cost of legal defense until she abandons her effective reporting of Mr. Kesner.

16. Such lawsuits are colloquially called SLAPP suits or a strategic lawsuit against public participation. As of November 10, 2020, New York now has significant anti-SLAPP remedies,[2] including the right to maintain counterclaims in suits like this one brought and continued by the Plaintiff, namely, as an intimidation tactic to chill Ms. Buhl's freedom of speech.

17. Plaintiff's effort to silence Ms. Buhl and chill her First Amendment rights through this lawsuit is exactly the type of conduct that "anti-SLAPP" statutes are designed to address. New York enacted modifications to its anti-SLAPP law to provide the utmost protection for the free exercise of speech and the kind of reporting and publications at issue here: "communications in a . . . public forum in connection with an issue of public interest." "Public interest" is "broadly construed" and includes "any subject other than a purely private matter."

18. At least one court in the Southern District of New York has ruled that New York's new anti-SLAPP statute has retroactive application to cases already pending when the legislation was adopted, such as the case here. *Palin v. N.Y. Times Co.*, No. 17-CV-4853 (JSR), 2020 WL 7711593, at *3 (S.D.N.Y. Dec. 29, 2020).

19. This Court has already dismissed a majority of Plaintiff's claims against Ms. Buhl pursuant to Rule 12(b)(6) by finding those claims failed to state a plausible claim for which relief can be granted. The remaining publications currently at issue in this case relating to Ms. Buhl,

---

[2] The New York State legislature passed Assembly Bill A5991A which was signed into law on November 10, 2021. *See* https://www.nysenate.gov/legislation/bills/2019/a5991. The new law amended portions of N.Y. Civ. Rights Law 70-a & 76-a and NY Civil Practice Law and Rules 3211(g) and 3212(h).

following the Court's Opinion and Order dated January 26, 2021, are the following (collectively, the "Buhl Materials"):

 a. A October 31, 2018 article published on teribuhl.com, titled "*Honig Deals lead to FINRA Investigation of Laidlaw & Co.*"

 b. A June 07, 2019 article published on teribuhl.com, titled "*New Emails show attorney Harvey Kesner aided Defrancesco in Questionable Cannabis Stock Deal: $APHA $SOLCF.*"

 c. A March 27, 2019 statement published under the Twitter handle "@buhlreports" on twitter.com.

**FIRST COUNTERCLAIM**
**Violation of New York's anti-SLAPP law**
**(asserting rights pursuant to N.Y. Civ. Rights § 70-A, et. al)**

20. Ms. Buhl repeats and re-alleges each and every allegation in Paragraphs 1-19 of the Counterclaim as if fully set forth herein.

21. The recently updated NY anti-SLAPP law allows a defendant to an action involving public petition and participation, such as Teri Buhl, to maintain a counterclaim to recover damages, including costs and attorney fees, against the Plaintiff, who has commenced and continued the action. N.Y. Civ. Rights Law § 70-A.

22. An action involves public petition and participation when the plaintiff's claim is based on: "(1) any communication in a place open to the public or a public forum in connection with an issue of public interest; or (2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest . . .." N.Y. Civ. Rights Law § 76-A (a)(1)-(2).

23. Ms. Buhl's reporting primarily focuses on legal proceedings, facts, and circumstances related to publicly traded companies. Such reporting, as contained in the Buhl Materials, is important and vitally necessary to shareholders, and the investing public as a whole, to ensure transparency in the securities industry.

24. Ms. Buhl has engaged in reporting of Mr. Kesner and his potential role in a number of questionable securities and/or financial transactions starting around May 2016 and continuing to this day.

25. Ms. Buhl's investigative reporting in the Buhl Materials is part of a "communication in a place open to the public or a public forum" and the Buhl Materials concern issues of "public interest."

26. The Plaintiff's action against Ms. Buhl constitutes an action involving "public petition and participation," thus entitling Ms. Buhl to relief afforded by law. N.Y. Civ. Rights Law § 70-A.

27. Plaintiff has commenced and continued this action without a substantial basis in fact and law and it is not supported by a substantial argument for the extension, modification or reversal of existing law, under § 70-A (a).

28. Ms. Buhl is entitled to attorneys' fees and costs.

29. Plaintiff has commenced and continued this action for the purpose of harassing, intimidating, punishing and otherwise maliciously inhibiting Ms. Buhl's free exercise of speech, petition or association rights under § 70-A (b).

30. Plaintiff is liable to Ms. Buhl for damages.

31. Plaintiff has commenced and continued this action for the *sole* purpose of harassing, intimidating, punishing and otherwise maliciously inhibiting Ms. Buhl's free exercise of speech, petition or association rights, making punitive damages appropriate under § 70-A (c).

## DEMAND FOR RELIEF

**WHEREFORE**, Counterclaimant respectfully demands judgment that:

A. Counterclaimant is entitled to attorneys' fees and costs pursuant to N.Y. Civ. Rights Law § 70-A (a);

B. Counterclaimant is entitled to "other compensatory damages" in an amount of not less than $500,000 (or an amount to be determined at trial) as a result of Counterdefendant bringing his case for the purpose of harassment, intimidation, punishment, or to maliciously inhibit free speech, petition, or association rights, as set forth in N.Y. Civ. Rights Law § 70-A (b);

C. Counterclaimant is entitled to punitive damages because the Counterdefendant brought his case "for the sole purpose" of harassing, intimidating, punishing or maliciously inhibiting free speech, petition, or association rights, under § 70-A (c); and

D. Counterclaimant is entitled to such other and further relief as may be just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Teri Buhl hereby demands trial by jury in this action of all issues so triable.

Dated: March 08, 2021
       New York, New York

Respectfully submitted,

_/s/ Wesley J. Paul_

Wesley J. Paul, Esq.
Paul Law Group, LLP
902 Broadway, 6th Floor
New York, NY 10010
Tel: (646) 278-9955
Fax: (646) 514-6829
wpaul@paullawgrp.com
*Attorney for Defendant Teri Buhl*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 08, 2021, he caused the foregoing Answer, Affirmative Defenses, and Counterclaim to be filed electronically via ECF filing with the Southern District of New York, and a copy of which is serviced via the ECF filing system to all registered counsel of record in this action.

Dated: March 08, 2021        By: _____
New York, New York
                              Wesley J. Paul